IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KATRINA BERAN,<br><br>    Plaintiff,<br><br>vs.<br><br>VSL NORTH PLATTE COURT LLC,<br><br>    Defendant. | 7:21CV5003<br><br><br>MEMORANDUM AND ORDER REGARDING THE PARTIES' MOTIONS IN LIMINE |

Plaintiff Katrina Beran's remaining claims of sexual harassment in violation of Nebraska and federal employment laws are set for trial beginning May 9, 2023. In anticipation of trial, both Beran and defendant VSL North Platte Court, LLC, d/b/a Linden Court (Linden Court), have filed Motions in Limine. *See* Filing 48 (Linden Court's motion); Filing 50 (Beran's motion). For the reasons stated below, both Motions are granted in part and denied in part.[1]

## I.  BACKGROUND

As explained in more detail in the Court's Memorandum and Order Regarding Defendant's Motion for Summary Judgment, Filing 40,[2] on March 25, 2019, Linden Court hired Beran as a Certified Nurse Assistant (CNA). Linden Court is a fully staffed skilled nursing and rehabilitation facility for the elderly, providing a full range of care from minimal assistance to 24-hour skilled nursing care, including specialized care for residents with Alzheimer's disease or related

---

[1] Beran filed an untimely Reply in support of her Motion in Limine Filing 63. The Court's Civil Jury Trial Deadlines and Practices Order at https://www.ned.uscourts.gov/attorney/judges-information, with which the parties were ordered to comply, *see* Filing 42 (trial setting order), provides that replies on motions in limine are due "no later than three (3) days after the opposition is filed." Beran's Reply was filed seven days after Linden Court's Opposition. *See* Filing 58. Belated replies are disruptive to the Court's and the parties' trial preparations, even if they clarify evidentiary issues. Linden Court filed a Motion to Strike Reply Brief. Filing 64. Commendably, Beran's counsel promptly emailed the Court in response to that Motion to Strike, stating that she did not oppose the Motion to Strike and admitting that she had mistakenly calendared her deadline to reply based on NECivR 7.1 rather than the Court's Civil Jury Trial Deadlines and Practices Order. The Court granted the Motion to Strike by Text Order. Filing 65. The Court appreciates both counsels' recognition of the appropriate deadlines for trial preparation.

[2] *Published at Beran v. VSL N. Platte Ct. LLC*, No. 7:21CV5003, 2022 WL 18898563 (D. Neb. Dec. 9, 2022).

1

dementias. Filing 40 at 2. Counts VII and VIII of Beran's Second Amended Complaint, Filing 25—the only Counts remaining after the Court's summary judgment ruling—allege hostile work environment sex discrimination in violation of 42 U.S.C. § 2000e-2 and Neb. Rev. Stat. § 48-1004, respectively, based on unwelcome sexual conduct toward Beran by a fellow CNA, Chris Eugene. Filing 25 at 9–10 (¶¶ 47–56). In her statement of facts in opposition to Linden Court's Motion for Summary Judgment, Beran asserted that this claim is based on allegations about Eugene touching or pinching her "bottom" or "butt" on January 25, 2020; three incidents on January 26, 2020, involving Eugene telling her that it is a man's job to lift a resident, Eugene pushing her up against the wall and groping her breasts, and Eugene grabbing and refusing to let go of her hand; an incident on January 27, 2020, involving Eugene refusing to work and then telling Beran to cool her hormones and take her rag out; and another incident on January 27, 2020, in which Eugene elbowed Beran hard in the chest. Filing 34 at 19 (¶ 16). Filing 34 at 10 (¶ 58); *see also* Filing 34 at 8–10 (¶¶ 52–61) (describing the incidents on January 25 through 27, 2022). Beran also alleges that she was aware that Eugene had inflicted similar conduct on other women at Linden Court. Filing 34 at 10 (¶ 58); Filing 34 at 19 (¶ 17).

## II. LEGAL ANALYSIS

In its Motion in Limine, Linden Court seeks exclusion of four categories of evidence at trial. Filing 48 at 1–2. In her Motion in Limine, Beran seeks exclusion of three categories of evidence at trial. Filing 50 at 1. The primary bases for exclusion of all these categories of evidence are Federal Rules of Evidence 401, 402, and 403. In addition, two of the three categories of evidence that Beran seeks to exclude implicate Rule 404(b) concerning bad-acts evidence. Thus, the Court begins with a summary of the standards for admissibility of evidence under these rules, although other evidentiary rules or standards may also apply to specific categories of evidence.

2

### A. Admissibility Standards

*1. Relevance and Prejudice Standards*

"Federal Rule of Evidence 401 says that '[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Williams v. Baum*, 48 F.4th 571, 573 (8th Cir. 2022) (quoting Fed. R. Evid. 401). "Under Federal Rule of Evidence 402, evidence that is not relevant—that is, having 'any tendency to make' the existence of any fact that is of consequence to the determination of the action 'more or less probable than it would be without the evidence,' *see* Fed. R. Evid. 401—is not admissible." *United States v. Finley*, 56 F.4th 1159, 1167 (8th Cir. 2023).

Even if evidence is otherwise relevant and admissible, "Federal Rule of Evidence 403 . . . permits the district court to exclude [it] 'if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *United States v. Dozier*, 31 F.4th 624, 628 (8th Cir.) (quoting Fed. R. Evid. 403), *cert. denied*, 143 S. Ct. 237 (2022). "Rule 403 does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is *unfairly* prejudicial." *United States v. Wright*, 993 F.3d 1054, 1061 (8th Cir. 2021) (citation omitted; emphasis in the original). Evidence excludable under Rule 403, then, is "the kind of evidence that 'divert[s] the jury's attention from the material issues in the trial'" and does not aid the jury in determining any matter at issue. *United States v. Mink*, 9 F.4th 590, 604 (8th Cir. 2021) (quoting *Wright*, 993 F.3d at 1061), *cert. denied*, 142 S. Ct. 1166 (2022). Thus, for example, evidence may be excluded pursuant to Rule 403 if its probative value is "outweighed by the risk of distraction in conducting mini trials on the detailed facts underlying" the specific matter the evidence addresses. *United States v. Battle*, 774 F.3d 504, 514 (8th Cir. 2014). A trial court's exclusion of evidence under Rule 403 is entitled to substantial

3

deference "so long as the trial court's exercise of discretion '[does] not unfairly prevent a party from proving [its] case.'" *United States v. Woods*, 978 F.3d 554, 566 (8th Cir. 2020) (quoting *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 716 (8th Cir. 2001)).

    2.    *Bad-Acts Evidence Standards*

Rule 404(b) provides,

**(b) Other Crimes, Wrongs, or Acts.**

**(1) Prohibited Uses.** Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2) Permitted Uses.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b)(1)–(2). Although the rule is cast in terms of evidence of bad acts of "a person," it is most often discussed in relation to bad acts of a defendant. *See, e.g., United States v. Brandon*, 64 F.4th 1009, 1020 (8th Cir. 2023) (discussing the rule in terms of inadmissibility of bad acts evidence "to show the defendant's propensity to commit crimes"); *but see McGuire v. Cooper*, No. 8:16CV4, 2018 WL 3935053, at *2–3 (D. Neb. Aug. 16, 2018) (applying Rule 404(b) to bad acts of the plaintiff and third-party witnesses without articulating specific standards). Hence, the Eighth Circuit Court of Appeals has recognized that evidence is properly admitted under Rule 404(b) if "(1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value." *Id.* at 1020–21 (citation omitted). The second consideration of "similarity in kind" seems to this Court to have particular weight when the evidence is offered to show a defendant's motive for the wrongful conduct he or she is charged with committing. On the other hand, it seems to the Court to have little or no weight when the

4

evidence involves a plaintiff's bad acts used for a purpose permitted under Rule 404(b)(2). The parties have not cited and the Court has not found a decision of the Eighth Circuit Court of Appeals addressing the proper test for admissibility of evidence of a plaintiff's bad acts.

However, the First Circuit Court of Appeals uses a two-part test to determine admissibility under Rule 404(b), which this Court finds is equally applicable to bad acts of either a plaintiff or a defendant, instead of the Eighth Circuit's four-part test, which is most applicable to a defendant's bad acts. *See Gonpo v. Sonam's Stonewalls & Art, LLC*, 41 F.4th 1, 5 (1st Cir. 2022). The first part asks whether the bad-act evidence has "special relevance," such as relevance to one of the reasons stated in the non-exhaustive list in Rule 404(b)(2). *Id.* The second part asks if the first part is satisfied whether the evidence can "clear the strictures of Rule 403." *Id.* This test appears to this Court to address appropriately the limits on admissibility of bad-acts evidence under Rule 404(b) in the circumstances at issue in this case.

With these standards in mind, the Court turns to consideration of the parties' Motions in Limine, beginning with Beran's Motion.

### B. Beran's Motion in Limine

In her Motion in Limine, Beran seeks exclusion of the following categories of evidence at trial: (1) evidence of unrelated and remote prior work incidents or discipline regarding Beran's performance or character; (2) evidence of the circumstances surrounding and reasons given for Beran's termination of employment; and (3) evidence that Beran brought other claims that were voluntarily or involuntarily dismissed. Filing 50 at 1. The Court will consider the admissibility of these categories of evidence in turn.

### 1. *Evidence of Incidents of Beran's Performance or Character*

Beran identifies Rule 401, 402, 403, and 404 as relevant to her first category of evidence. First, she asserts that Linden Court is expected to present its Exhibit 106 regarding what she

5


characterizes as an "unfounded" complaint of racial bias made against her by another coworker. Filing 51 at 1. Linden Court agrees the information in its Exhibit 106 is not relevant to Beran's sexual harassment claim, so Linden Court will not present it unless Beran seeks to present evidence regarding her dismissed claims. Filing 56 at 1–2. Linden Court specifically identifies Beran's Exhibit 10 as offered to refute the information in its Exhibit 106 and argues that Exhibit 10 should also be excluded. Filing 56 at 2. Linden Court's Exhibit 106 is excluded in light of the parties' agreement that it is irrelevant. *See* Fed. R. Evid. 401; Fed. R. Evid. 402. The Court concludes that Exhibit 10 is not relevant if Exhibit 106 is excluded, so Exhibit 10 is also excluded. *See* Fed. R. Evid. 401; Fed. R. Evid. 402.

Beran also seeks exclusion of Linden Court's Exhibits 104 and 105 regarding Beran's performance in certain incidents in August 2019 and November 2019. Filing 51 at 1–2. Linden Court does not oppose exclusion of its Exhibit 105, so that Exhibit is excluded. The admissibility of Exhibit 104 is a more complicated question.

As to Exhibit 104, Beran argues that because it relates to an incident of her performance prior to Linden Court hiring Chris Eugene, her alleged harasser, it relates to an incident that is remote in time and that has nothing to do with her allegations of sexual harassment. Filing 56 at 2. Consequently, she argues that the danger of unfair prejudice outweighs any probative value of the Exhibit, where a wrongful termination claim is not before the Court. Filing 51 at 2. Linden Court points out that the incident at issue in Exhibit 104 involves a resident's grievance about Beran. Filing 56 at 2. Linden Court argues that although the underlying facts of the grievance submitted by a resident against Beran may not be relevant to the dispute, Beran was ultimately disciplined because of untruthful statements she made to the aggrieved resident and during the internal investigation of the grievance. Filing 56 at 2. Thus, even if this Exhibit is not admissible, Linden

Court argues that it should still be allowed to cross-examine Beran regarding this incident to challenge her credibility under Federal Rule of Evidence 608(b)(1). Filing 56 at 2. Linden Court does not seek to admit this Exhibit pursuant to Rule 404(b).

> The Eighth Circuit Court of Appeals has explained,
>
> Under [Rule 608(b)], 'extrinsic evidence is [generally] not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." But, a court may allow specific instances of conduct to be inquired into on cross-examination "if they are probative of the character for truthfulness or untruthfulness of: (1) the witness . . . .'

*Holmes v. Slay*, 895 F.3d 993, 1000 (8th Cir. 2018) (bracketed language inserted in the original). "In inquiring about the witness's conduct, the questioner must take the answer provided by the witness and cannot use 'extrinsic evidence to prove that the specific bad acts occurred.'" *United States v. Grandison*, 781 F.3d 987, 992 (8th Cir. 2015) (quoting *United States v. Martz*, 964 F.2d 787, 789 (8th Cir. 1992)). Even if inquiry into a bad act is permissible for purposes of impeachment under Rule 608(b), "it [i]s not an abuse of discretion for the district court to exclude it anyway under Rule 403." *Trotter v. Lawson*, 997 F.3d 819, 822 (8th Cir. 2021).

The Court concludes that Exhibit 104 itself is extrinsic evidence of a specific instance of Beran's alleged untruthful conduct that cannot be offered to attack her character for truthfulness. Fed. R. Evid. 608(b); *Holmes*, 895 F.3d at 1000. Thus, Exhibit 104 will be excluded. On the other hand, the Court concludes it is possible that the incident addressed in Exhibit 104 can be inquired into on cross-examination of Beran, because it has some probative value as to Beran's character for untruthfulness. *See id.*; *Holmes*, 895 F.3d at 1000. The relevant inquiry would not be limited to whether Beran actually made a false statement to a resident or during the investigation but could encompass whether she was disciplined for making a false statement. As the Seventh Circuit Court of Appeals explained in *Young v. James Green Management, Inc.*, 327 F.3d 616 (7th Cir. 2003), the district court did not abuse its discretion by allowing opposing counsel to inquire on cross-

examination "whether [the plaintiff's] former employer . . . had accused him of stealing documents," because "[s]tealing is probative of untruthfulness." 327 F.3d at 326–27. Likewise here it is permissible for Linden Court to inquire on cross-examination of Beran whether Linden Court had accused her of making untruthful statements, because untruthful statements are plainly probative of untruthfulness. *Id.* For such an inquiry to be permissible, however, it would have to avoid drawing in any detail that would tip the scales toward undue prejudice over probative value, thereby running afoul of Rule 403. *See* Fed. R. Evid. 403; *Trotter*, 997 F.3d at 822 (explaining that an inquiry permissible pursuant to Rule 608(b) may still be excluded under the Rule 403). Thus, a contemporaneous objection to the scope of the inquiry will not necessarily be barred by this ruling.

In short, as to this category of evidence, Beran's Motion is granted as to Linden Court's Exhibits 104, 105 and 106. Beran's Exhibit 10 will also be excluded. An inquiry on cross-examination as to whether Beran had been accused by Linden Court of untruthful statements is permissible.

        *2.*      *Circumstances and Reasons for Beran's Termination*

The second category of evidence Beran seeks to exclude is evidence of the circumstances surrounding and reasons given for the termination of her employment. Filing 50 at 1. Beran asserts that this category of evidence implicates Rule 404(b), as well as Rules 401, 402, and 403. Beran contends that such evidence or argument is not relevant or necessary to litigate her sexual harassment claim. Filing 51 at 2. Beran argues that if Linden Court is permitted to discuss the circumstances of and the reasons for her termination, she should be allowed to refute them, which could result in a "mini-trial" about a retaliatory discharge claim that has been dismissed. Filing 51 at 2.

Linden Court claims that it is generally in agreement with this position, with two significant caveats. Filing 56 at 3. The first caveat Linden Court asserts is that the Court should also exclude

Beran's Exhibits 5 and 17, which are investigation materials developed by Linden Court during its investigation of the circumstances leading to Beran's termination, and Exhibit 16, which relates to a grievance filed by the resident in Room 107 in front of whom Beran alleges Eugene used profanity. Filing 56 at 3. The second caveat is that the parties should still be permitted to show that Beran was involuntarily terminated. Filing 56 at 3. Linden Court agrees not to adduce evidence or argument about the circumstances of and reasons for Beran's termination, but it argues that it should be allowed to identify in general terms that Beran was involuntarily terminated. Filing 56 at 3–4. Linden Court contends that this is so because the involuntary termination "speaks to [Beran's] motivation for fabricating" allegations of sexual harassment. Filing 56 at 3–4.

The Court finds total exclusion of this evidence is inappropriate. While it may not be relevant to the elements of a sexual harassment claim, it is plainly relevant to Beran's credibility where she was terminated for making false statements to support a grievance about improper conduct in front of residents by the very coworker she now claims sexually harassed her. *See* Fed. R. Evid. 401; Fed. R. Evid. 402. The Court concludes further that excluding evidence about the circumstances or reasons for Beran's termination while admitting evidence that she was involuntarily terminated would be very likely to confuse the jurors and lead to unwarranted speculation. While Beran should have the opportunity to try to refute a finding that she lied in the investigation of her complaint, the Court does not believe that the risk of a "mini trial" so outweighs the relevance of the evidence to Beran's credibility as to warrant complete exclusion of the evidence. *See* Fed. R. Evid. 403; *Mink*, 9 F.4th at 604; *Battle*, 774 F.3d at 514.

The Court finds that this evidence is also admissible under the test for admissibility of evidence of the bad acts of the plaintiff drawn from *Gonpo v. Sonam's Stonewalls & Art, LLC*, 41 F.4th 1, 5 (1st Cir. 2022), and discussed above in Section II.A.2. In *Gonpo*, the First Circuit upheld

9

on abuse-of-discretion review the district court's exclusion of evidence that the defendant's daughter had accused the plaintiff of rape offered by the defendant to show the plaintiff's motive for bringing a wage-and-pay claim. 41 F.4th at 5. The district court had discounted the relevance of the evidence because it concluded "motives for bringing suit are immaterial" and on a Rule 403 analysis concluded that the evidence was "incendiary" so that it was highly prejudicial. *Id.* Here, evidence of an involuntary termination, even for making false statements, is nowhere near as "incendiary" as an allegation of rape, while the motive to bring a specious claim is more probative where—as here—the claim turns in large part on credibility of the parties and witnesses. *See also id.* at 6 (noting that the court was "skeptical of the district court's discounted-probative-value analysis"). While there may be some prejudicial taint to being terminated for making false statements, that prejudice is not sufficient to outweigh the substantial probative value of evidence going to Beran's credibility and possible motive to manufacture a claim in retaliation for the termination. *Wright*, 993 F.3d 1061 (explaining that Rule 403 "protects against evidence that is *unfairly* prejudicial").

Because the Court will admit the evidence Beran challenges, the Court need not address Linden Court's assertion that if evidence of the circumstances of and reasons for Beran's termination are excluded, Beran's Exhibits 5, 16, and 17 should also be excluded.

In short, this part of Beran's Motion in Limine is denied.

3. *Dismissed Claims*

The last category of evidence that Beran seeks to exclude is evidence that she brought other claims that were voluntarily or involuntarily dismissed. Filing 50 at 1. Linden Court responds that it does not oppose Beran's Motion in Limine regarding her previously dismissed claims. Filing 56 at 4. Thus, this part of Beran's Motion in Limine is granted.

### C. Linden Court's Motion in Limine

In its Motion in Limine, Linden Court seeks exclusion of the following categories of evidence at trial: (1) evidence of consensual sexual relationships between Linden Court's employees; (2) evidence Linden Court's employees were having sexual intercourse inside Linden Court's facility; (3) evidence Chris Eugene hit Beran's coworker with a medication cart; and (4) evidence Beran believed she was subjected to increased scrutiny at work. Filing 48 at 1–2. The Court will also consider these categories in turn.

*1. Evidence of Consensual Sexual Relationships and Sexual Intercourse in the Facility*

The Court will consider the first two categories of evidence together because the parties make essentially the same arguments for the inadmissibility or admissibility of both of them. As to the first category of challenged evidence, Linden Court points out that Beran testified in her deposition as to rumors of sexual relationships between employees at Linden Court, which were not punished. Filing 49 at 2. Linden Court contends that any evidence regarding this issue is irrelevant to Beran's claim of sexual harassment. Filing 49 at 2. More specifically, Linden Court contends that mere rumored events of which a plaintiff had no personal knowledge and no independent basis for determining their truth are insufficient to establish the existence of a hostile work environment. Filing 49 at 2. Linden Court contends the same is true of evidence of consensual relationships between adults. Filing 49 at 3. Linden Court contends that such evidence will only confuse the jury as to what evidence demonstrates a sexually hostile work environment. Filing 49 at 3. Similarly, Linden Court contends that the second category of evidence it challenges, involving evidence that employees were having sexual intercourse in the care home, also involve nothing but rumors that Beran heard, so such evidence should be excluded for the same reasons as the first

category. Filing 49 at 3. If anything, Linden Court argues that such evidence is more "scandalous" so that the potential for unfair prejudice from admitting such evidence is greater. Filing 49 at 4.

Beran argues that evidence of a consensual sexual relationship between Linden Court's Human Resources Manager, Jessica Bertschinger, and its Administrator, Nolan Gurnsey, should be allowed if the Court allows evidence regarding her termination to show that Gurnsey's independent judgment was compromised and that his failure to act on or investigate Beran's complaints was influenced by his relationship with Bertschinger. Filing 57 at 2. Beran argues that even if evidence related to her termination is excluded, Bertschinger testified that a relationship between a supervisor and a subordinate would violate Linden Court's sexual harassment policy. Filing 57 at 2. Consequently, Beran argues this evidence of a failure to address that situation is relevant to whether a hostile work environment existed, Beran's assessment of Linden Court's response to her complaints, Bertschinger's and Gurnsey's ability to identify and respond appropriately to a hostile work environment, and Bertschinger's and Gurnsey's credibility. Filing 57 at 2–3. Beran argues further that evidence Linden Court allowed male employees to solicit, proposition, date, and have sex with female employees in the facility is relevant to whether the work environment was objectively and subjectively sexually hostile. Filing 57 at 3. Beran points out that she testified that she and others were aware of a male employee who was having a relationship with at least three other female employees in the facility at the same time, while Bertschinger testified that she was informed of those relationships by the female employees directly involved, but she did not investigate because the relationships were consensual. Filing 57 at 3. Beran argues that although Linden Court may not like letting the jury hear this evidence, Linden Court gives no unique reason why such evidence is unfairly prejudicial, would confuse the jury, or would lead to a verdict on an improper basis. Filing 57 at 3.

The evidence in question appears to be from Beran's deposition, Filing 58-2 at 3–4 (Beran Depo. at 69:15–71:20).³ In her deposition, Beran testified *inter alia*,

> Say we had a maintenance -- in our HR clause, it had we were not to have relationships with other coworkers. We had a maintenance man that was sleeping with, physically, in our laundry room, the housekeeper. Nothing got brought up against him. We had had Nolan [Gurnsey], our administrator, that was sleeping with our HR, Jessica Birch [sic]. Nothing was brought up against him. We had Chris [Eugene] who multiple women had alleged that he had sexually assaulted [them] and nothing was brought up against him. The same maintenance man was sleeping with two or three other CNAs and gave them STDs. Nothing was brought up against him.

Filing 58-2 at 3–4 (Beran Depo at 69:20–70:6). In response to a question about who the "maintenance man" had sexual relationships with, Beran testified, "There was two CNAs down on memory support. I know my old charge nurse on Ash, he had physically had a sexual relationship with because she had confided in us about it." Filing 58-2 at 4 (Beran Depo. at 71:3–6). She testified further, "One of the gals down on memory [support], who [the maintenance man] was sleeping with, was on light duty and had walked in on [the maintenance man and the housekeeper having sex] and she had reported it." Filing 58-2 at 4 (Beran Depo. at 71:14–16). Neither in these excerpts nor in any other part of Beran's deposition that has been drawn to the Court's attention at this time is there a statement demonstrating that Beran had firsthand knowledge of any of these incidents. Rather, Beran's testimony reflects only rumors of sexual relationships at Linden Court.

In *Stephens v. Rheem Mfg. Co.*, 220 F.3d 882 (8th Cir. 2000), the Eighth Circuit Court of Appeals reviewed a ruling on a defendant employer's motion in limine asking the district court to exclude rumors of sexual affairs among its management and employees in a sexual harassment

---

³ Linden Court does not cite the specific evidence it seeks to exclude. Filing 49 at 2–4. Beran identifies her deposition testimony concerning the alleged sexual relationships at Linden Court. Filing 57 at 3.

case. *Stephens*, 220 F.3d at 885. The Eighth Circuit "fully agree[d] with the District Court that the admittance of such salacious rumor-based evidence could have unduly prejudiced the jury against [the employer], and that this danger of prejudice greatly outweighed the limited probative value of the evidence." *Id.* The Eighth Circuit observed further that "because consensual affairs and unwelcome sexual harassment are entirely separate exploits, with distinct motivations and underlying conduct, the jury could have reasonably concluded that the rumor evidence was wholly irrelevant" to the unwelcomeness of sexual conduct and the sexual hostility of the environment. *Id.* This Court agrees that here the rumors of sexual relationships among Linden Court's employees and at its facility are sufficiently salacious that the risk of prejudice outweighs their limited probative value to show a sexually hostile environment. *Id.*; Fed. R. Evid. 403. This is true even as to whatever probative value evidence of a purported sexual relationship between Bertschinger and Gurnsey may have on their ability to identify and respond appropriately to a hostile work environment or their credibility.

Linden Court's Motion in Limine is granted to the extent that these two categories of evidence will be excluded.

    2.    *Evidence that Eugene Hit a Coworker with a Cart*

Next, Linden Court seeks to exclude evidence that Chris Eugene hit Beran's female coworker with a medication cart. Filing 48 at 1. Linden Court asserts that in her deposition, Beran presented this evidence as showing that she worked in a hostile environment, but it is irrelevant to any of the elements of her sexual harassment claim. Filing 48 at 4–5. Linden Court argues that this evidence does not "augment" evidence of sexual harassment directed at Beran. Filing 48 at 5. Linden Court argues that such evidence does not make it any more or less likely that Beran was sexually harassed but is unfairly prejudicial, serving only to cast Linden Court in a bad light. Filing 48 at 5.

Beran responds that such evidence is admissible given the Eighth Circuit's very long and consistent history of admitting acts of discrimination and harassment against others in the plaintiff's workplace, and the requirement that the balance of Rule 403 weighing be struck in favor of admission. Filing 57 at 4. She also argues that she alleges that Eugene physically assaulted her and that her complaints about that were ignored, so evidence of this incident, which allegedly occurred in front of a supervisor but resulted in no consequences, shows Linden Court's actual or constructive knowledge of harassment, Linden Court's intent to discriminate, the existence of a hostile work environment, the reasonableness of her assessment of Linden Court's response to her complaints, and the veracity of her claims that Eugene assaulted her. Filing 57 at 5.

As the Eighth Circuit Court of Appeals has explained,

> When judging the severity and pervasiveness of workplace sexual harassment, this court has long held harassment directed towards other female employees is relevant and must be considered. *See Hall v. Gus Constr. Co*., 842 F.2d 1010, 1014–15 (8th Cir.1988) ("We also reject appellants' contention that the district court erroneously considered all of the women's claims together in determining that the harassment was sufficiently pervasive and severe...."). In *Williams v. ConAgra Poultry Co*., 378 F.3d 790, 793–94 (8th Cir.2004), the court discussed the distinction between evidence offered to prove the substance of a plaintiff's hostile work environment claim versus evidence offered to prove the severity and pervasiveness of harassment in the workplace. In *Williams*, the plaintiff (Williams) offered the testimony of several co-workers detailing a host of racially motivated harassment that occurred during his employment at Conagra's plant. *Id*. at 793. Conagra objected because Williams conceded he was unaware of the incidents, and according to Conagra, the evidence could not be used to prove Williams found the workplace subjectively hostile. *Id*. at 794. This court, recognizing the evidence was irrelevant to Williams's subjective perceptions of his workplace, nonetheless found the evidence highly relevant to prove, among other things, the type of workplace environment to which Williams was subjected. *Id.*
>
> Accordingly, we conclude the district court erred in disregarding the evidence of widespread sexual harassment. Though the evidence cannot be used to prove the timely plaintiffs found their workplace subjectively hostile, it is highly relevant to prove the sexual harassment was severe and pervasive and that ABMK had constructive notice.

*Sandoval v. Am. Bldg. Maint. Indus., Inc*., 578 F.3d 787, 802–03 (8th Cir. 2009).

Unlike the situation in *Sandoval*, Beran herself witnessed the incident in which Eugene allegedly hit Beran's female coworker with a medication cart, even if it involves only a single incident rather than "widespread" sexual harassment. *See id.* The Court recognizes that a single incident of sufficient severity may be probative of whether sexual harassment was severe or pervasive. *See Hairston v. Wormuth*, 6 F.4th 834, 841 (8th Cir. 2021) (explaining that "a few isolated or sporadic incidents" may be sufficient to establish a hostile environment if they are "extremely serious"). The Court also recognizes that, unlike the situation in *Sandoval*, where the plaintiff was unaware of the incident, Beran witnessed the incident. *See, e.g.*, *Vandiver v. Little Rock Sch. Dist.*, No. 4:03-CV-00834 GTE, 2007 WL 2806928, at *3 (E.D. Ark. Sept. 25, 2007) ("[I]f Plaintiff were to testify that she was aware of those alleged specific instances, the Court would find evidence of same admissible to show the alleged hostile work environment.").

What is missing from this evidence is any showing that the cart incident was related to the coworker's sex. *Sandoval*, 578 F.3d at 802-03 (referring to sexually harassing conduct toward coworkers). Review of the pertinent part of Beran's deposition gives no hint that Eugene's hitting the coworker with a medication cart was because of the coworker's sex; rather, Beran's deposition indicates that Eugene was acting out because of a complaint that "he had used extreme force against a resident who had a broken femur and [had] just thrown him into bed instead of waiting for a lift." Filing 58-2 at 4 (Beran Depo. at 71:24–72:6); *see generally* 58-2 at 4–5 (Beran Depo. at 71:24–74:2) (testimony about this incident). Consequently, Beran's testimony that she saw Eugene hit a coworker with a medication cart is not probative of the existence of a sexually hostile environment.

This part of Linden Court's Motion in Limine is granted.

*3. Increased Scrutiny of Beran*

The last category of evidence that Linden Court seeks to exclude is evidence that Beran believed she was subjected to increased scrutiny at work after her complaint of sexual harassment. Filing 48 at 2. Linden Court argues that increased scrutiny is generally insufficient to give rise to a hostile environment claim. Filing 49 at 6. Linden Court argues that the allegations of increased scrutiny that Beran alleges are insufficient to support a claim of a hostile work environment, so they are irrelevant and inadmissible. Filing 49 at 7.

Beran asserts that if the Court allows evidence regarding her termination, this evidence should be permitted to show that she was not targeting Eugene and that her complaints against him were not false. Filing 57 at 6. Even if the evidence regarding her termination is excluded, Beran argues that Linden Court's increased scrutiny of her is directly relevant to whether Linden Court took prompt and appropriate corrective action to address Eugene's harassment of her or instead scrutinized her. Filing 57 at 6.

In *O'Brien v. Department of Agriculture*, 532 F.3d 805 (8th Cir. 2008), on which Linden Court relies, the Eighth Circuit stated, "Although increased scrutiny might, at some point, amount to a hostile work environment, nothing in this record warrants such a finding," where a supervisor scrutinized and criticized plaintiffs' travel documents for a training session and closely scrutinized and criticized their work, that evidence was insufficient to demonstrate a hostile work environment. 532 F.3d at 810. It is not clear that the "scrutiny" to which Beran alleges she was subjected would be sufficient to amount to a hostile work environment, either. Nevertheless, that is not the purpose—or not the only purpose—for which Beran asserts she will offer this evidence. Rather, she asserts that it is offered to directly show that Linden Court did not take prompt and appropriate corrective action to address Eugene's harassment of her and instead scrutinized her. Filing 57 at 6. In *Hairston v. Wormuth*, 6 F.4th 834 (8th Cir. 2021), the Eighth Circuit held that an

17

"uneven" investigation of allegations against two persons resulting in the termination of one of them could undermine the legitimacy of the employers' motive for a termination. 6 F.4th at 844-45. It seems to the Court that similarly an investigation of a claim of sexual harassment that focuses "unevenly" or excessively on the claimant rather than on the alleged harasser is probative of whether the employer took prompt and appropriate remedial action to end the harassment and whether the employer took the claimant's claim seriously or instead misdirected its attention for some purpose other than eliminating sexual harassment. *Cf. id.*

Thus, this part of Linden Court's Motion in Limine is denied.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that

1. Linden Court's Motion in Limine, Filing 48, is granted in part and denied in part, as set out in detail above; and

2. Beran's Motion in Limine, Filing 50, is granted in part and denied in part, as set out in detail above.

Dated this 5th day of May, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge