IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KATRINA BERAN,<br><br>              Plaintiff,<br><br>vs.<br><br>VSL NORTH PLATTE COURT LLC,<br><br>              Defendant. | 7:21CV5003<br><br>**MEMORANDUM AND ORDER ON PRE-VERDICT MOTIONS FOR JUDGMENT AS A MATTER OF LAW<br>AND<br>ORDER FOR BRIEFING ON APPLICATION OF STATUTORY CAPS ON DAMAGES** |

A jury trial was held in this case from May 9 through May 12, 2023, on plaintiff Beran's claims against her former employer, defendant VSL North Platte Court, LLC, doing business as Linden Court. Beran alleged claims for sexual harassment by her co-worker Chris Eugene, in violation of 42 U.S.C. § 2000e-2 and Neb. Rev. Stat. § 48-1004. On May 12, 2023, the jury returned a verdict for Beran and awarded $500,000 in total damages for emotional distress and $2,500,000 in punitive damages.

This case is now before the Court on the parties' pre-verdict motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a), which the Court took under advisement. This case is also before the Court on the issue of application of the statutory caps on compensatory and punitive damages on a Title VII claim pursuant to 42 U.S.C. § 1981a. For the reasons set out below, plaintiff Beran's Rule 50(a) motion is denied as moot, and defendant Linden Court's Rule 50(a) motion is denied. The Court also sets a deadline for briefing on application of the statutory caps.

1

## I. RULE 50(a) MOTIONS TAKEN UNDER ADVISEMENT

At the close of Beran's case, Linden Court moved for judgment as a matter of law pursuant to Rule 50 on three grounds. First, Linden Court asserted there was a lack of evidence of harassment that was sufficiently severe or pervasive to alter the conditions of Beran's employment. Second, Linden Court argued there was a lack of evidence that Linden Court knew or should have known of the alleged sexual harassment and failed to take remedial action. Third, Linden Court argued there was a lack of evidence sufficient to support a prayer for punitive damages. The Court took that motion under advisement. At the close of Linden Court's case, Beran moved for a directed verdict under Rule 50(a), asserting that she had presented sufficient evidence for judgment in her favor.[1] The Court took that motion under advisement. Linden Court then renewed its original Rule 50 motion, which the Court again took under advisement.

Rule 50(a) of the Federal Rules of Civil Procedure provides as follows:

**(a) Judgment as a Matter of Law**.

---

[1] Although Beran styled her motion as a "motion for directed verdict," that terminology has not been part of Rule 50 since the 1991 Amendment to the rule. As the Advisory Committee Notes explain,

> The revision abandons the familiar terminology of *direction of verdict* for several reasons. The term is misleading as a description of the relationship between judge and jury. It is also freighted with anachronisms some of which are the subject of the text of former subdivision (a) of this rule that is deleted in this revision. Thus, it should not be necessary to state in the text of this rule that a motion made pursuant to it is not a waiver of the right to jury trial, and only the antiquities of directed verdict practice suggest that it might have been. The term "judgment as a matter of law" is an almost equally familiar term and appears in the text of Rule 56; its use in Rule 50 calls attention to the relationship between the two rules. Finally, the change enables the rule to refer to preverdict and post-verdict motions with a terminology that does not conceal the common identity of two motions made at different times in the proceeding.
>
> If a motion is denominated a motion for directed verdict or for judgment notwithstanding the verdict, the party's error is merely formal. Such a motion should be treated as a motion for judgment as a matter of law in accordance with this rule.

Fed. R. Civ. P. 50(a), Advisory Committee Comments to 1991 Amendment, Subdivision (a) (emphasis in the original).

>   (1) ***In General.*** If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
>>   (A) resolve the issue against the party; and
>>
>>   (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>
>   (2) ***Motion***. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

Fed. R. Civ. P. 50(a). As the Eighth Circuit Court of Appeals recently explained, "In both Rule 56 motions for summary judgment and Rule 50 motions for judgment as a matter of law, the inquiry is the same: Whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Axelson v. Watson*, 999 F.3d 541, 546 (8th Cir. 2021) (quoting *Kinserlow v. CMI Corp.*, 217 F.3d 1021, 1025 (8th Cir. 2000)).

In this case, Beran's Rule 50(a) motion is mooted by the jury's verdict in her favor, so the Court will not discuss her Rule 50(a) motion further. Linden Court's original and renewed pre-verdict Rule 50(a) motions require somewhat more analysis, however.

The Court now denies both of Linden Court's Rule 50(a) motions because "the evidence present[ed] a sufficient disagreement to require submission to a jury" and was not "so one-sided that [Linden Court] must prevail as a matter of law." *Axelson*, 999 F.3d at 546. Contrary to Linden Court's assertion, there was evidence from which a reasonable jury could find that Eugene shoved Beran up against a wall and groped her breasts, pinched her bottom, grabbed her hand and refused to let go, and elbowed her in the chest, and that he also made various offensive utterances to Beran or in her presence. Fed. R. Civ. P. 50(a)(1). These are all indicia of a sexually hostile environment.

*See, e.g., Hairston v. Wormuth*, 6 F.4th 834, 841 (8th Cir. 2021) ("Assessing whether [the plaintiff] has met this burden, we look at the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with [her] work performance." (internal quotation marks and citations omitted)). Moreover, "a few isolated or sporadic incidents" may suffice, if sufficiently serious. *Id.* In particular, the evidence that Eugene shoved Beran against a wall and groped her breasts was a single incident of sufficient seriousness to submit the case to the jury. *Id.*

Also contrary to Linden Court's contentions, there is evidence from which a reasonable jury could find that Beran did tell Linden Court about the sexual harassment to which she had been subjected, but Linden Court's supervisor discounted, ignored, or "edited out" complaints suggestive of sexual harassment. Fed. R. Civ. P. 50(a). There were also inferences a reasonable jury could draw that Eugene's misconduct was sufficiently notorious among Linden Court's staff that Linden Court should have known about it and taken remedial action. *Cf. E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657, 691–92 (8th Cir. 2012) (holding that evidence of "rampant" harassment was sufficient constructive notice to establish the knowledge element (citing *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 802–03 (8th Cir. 2009)). A reasonable jury could conclude that it was not enough that Linden Court investigated the conduct that Linden Court claimed Beran told her supervisors about, if the jury concluded that the supervisors to whom she made her complaints were closing their eyes to other misconduct or redefining potentially sexually harassing conduct to avoid treating it as sexual harassment.

Indeed, for essentially the same reasons that a reasonable jury could find the harassment sufficiently severe or pervasive and that Linden Court knew or should have know about it despite

Linden Court's assertions to the contrary, a reasonable jury could also find Linden Court's conduct sufficiently malicious or reckless to support punitive damages. *See Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1010 (8th Cir. 2000) (explaining that punitive damages may be appropriate where a reasonable jury could have found the harasser's behavior "sufficiently abusive" to manifest the requisite malice or reckless disregard for the plaintiff's rights). Although Linden Court had an anti-harassment policy, a reasonable jury could conclude from the evidence presented at trial that Linden Court made so little effort to enforce that policy or to respond to complaints when made as to establish Linden Court's reckless disregard of Beran's right to be free of harassment. *Id.*

Consequently, Linden Court's Rule 50(a) motions, which the Court took under advisement during trial, are now denied.

## II.  STATUTORY "CAPS" ISSUES

Beran brought sexual harassment claims under both the Nebraska Fair Employment Act (NFEPA) and Title VII. However, "[t]he NFEPA is patterned after federal law, 'and given that neither party points to any differences between them, [the Court's] analyses of [a plaintiff's] federal claims apply with equal force to [her] state claims.'" *Gibson v. Concrete Equip. Co., Inc.*, 960 F.3d 1057, 1061 n.2 (8th Cir. 2020) (quoting *Blake v. MJ Optical, Inc.*, 870 F.3d 820, 825 n.7 (8th Cir. 2017)); *see also Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1039 (8th Cir. 2005) ("Both the Nebraska Supreme Court and [the Eighth Circuit] have stated the NFEPA 'is patterned after Title VII,' and, therefore, 'it is appropriate to consider federal court decisions construing the federal legislation' when considering questions under the NFEPA." (quoting *City of Fort Calhoun v. Collins*, 500 N.W.2d 822, 825 (Neb. 1993))). Beran's sexual harassment claims were not differentiated at trial, and she was awarded both compensatory damages for emotional distress and

punitive damages on an undifferentiated claim of sexual harassment. Some remittitur or adjustment of those damages is required under applicable law.

Specifically, a plaintiff cannot recover punitive damages under Nebraska law. *See O'Brien v. Cessna Aircraft Co.*, 903 N.W.2d 432, 458 (Neb. 2017) (citing Neb. Const. art. VII, § 5). Thus, punitive damages are unavailable on Beran's NFEPA claim for sexual harassment. On the other hand, while punitive damages are allowed under federal law for a Title VII violation, the same statute authorizing compensatory and punitive damages for discrimination claims under federal law also imposes "caps" on such damages. *See* 42 U.S.C. § 1981a. Specifically, under § 1981a, "[t]he sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed" certain dollar amounts based on the number of employees "in each of 20 or more calendar weeks in the current or preceding calendar year" that the employer "has." *See* 42 U.S.C. § 1981a(b)(3); *Sheriff v. Midwest Health Partners, P.C.*, 619 F.3d 923, 932 (8th Cir. 2010) ("Section 1981a(b)(3) permits an award of noneconomic damages for intentional discrimination in employment but sets limits on their amount corresponding to the size of a defendant business."). No evidence admitted at trial establishes the number of employees Linden Court "had" during the relevant period. Thus, in order to enter judgment on the jury's verdict and the statutory caps, the Court must be provided with relevant evidence on the number of employees Linden Court had at the pertinent time.

A further issue that must be determined prior to entry of judgment is whether and what allocation of compensatory and punitive damages may or must be made between the state and federal claims. A district court has discretion to allocate or apportion a damage award between

state and federal claims in cases such as this where the standards of liability are the same and the jury has not been asked to distinguish between claims in assessing damages. *See Madison v. IBP, Inc.*, 257 F.3d 780, 801 (8th Cir. 2001), *vacated on other grounds*, 536 U.S. 919 (2002); *see also MacGregor v. Mallinckrodt, Inc.*, No. 01-828, 2003 WL 23335194, at *9 (D. Minn. July 21, 2003) (explaining that when a damages award exceeds the maximum amount permitted by § 1981a(b)(3)(D), "remittitur is not required where the court is permitted to adjust the award and enter judgment in the statutory maximum amount" (citing *Luciano v. Olsten Corp.,* 110 F.3d 210, 220 (2nd Cir. 1997)), *aff'd sub nom. MacGregor v. Mallinckrodt, Inc.*, 373 F.3d 923 (8th Cir. 2004); *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 567 (6th Cir. 2019) (explaining that non-economic damages may be allocated to the plaintiff under state or federal law); *Bradshaw v. Sch. Bd. of Broward Cnty., Fla.*, 486 F.3d 1205, 1207–08 (11th Cir. 2007) ("The federal cap does not limit damages under parallel state laws, however; Congress expressly disclaimed any such intention. *See* 42 U.S.C. §§ 2000e–7 & 2000h–4. If possible, then, the remaining $200,000 of Bradshaw's jury verdict should be thrown into a judgment under the Florida CRA.").

Under these circumstances, the Court anticipates that it will allocate the entirety of Beran's damages for emotional distress ($500,000) to her NFEPA claim and allocate all punitive damages up to the statutory cap to her Title VII claim. *See Madison*, 257 F.3d at 801. However, the Court will not do so without allowing the parties the opportunity to be heard. After receiving the briefs ordered below, the Court will enter judgment on the jury's verdict, subject to the applicable statutory caps and allocations, and the time for the parties to file their post-trial Rule 50(b) motions, if any, will begin to run. *See* Fed. R. Civ. P. 50(b).

### III. CONCLUSION

Upon the foregoing,

7

1. Defendant Linden Court's Rule 50(a) motions during trial, which the Court took under advisement, are now denied;

2. Plaintiff Beran's Rule 50(a) motion during trial, which the Court took under advisement, is now denied;

3. On or before May 24, 2023, the parties shall file simultaneous briefs not to exceed ten pages and any evidence relevant to the applicable cap on compensatory and punitive damages under 42 U.S.C. § 1981a and the proper allocation of compensatory and punitive damages between the state and federal sexual harassment claims. No further briefing on these issues will be permitted prior to entry of judgment.

Dated this 17th day of May, 2023.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge