IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KATRINA BERAN,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>VSL NORTH PLATTE COURT LLC,<br><br>　　　　　　Defendant. | 7:21CV5003<br><br>**MEMORANDUM AND ORDER ON ALLOCATION OF DAMAGES AND APPLICATION OF STATUTORY CAPS AND DIRECTING ENTRY OF JUDGMENT** |

　　　　This case is before the Court after the parties' briefing on the allocation of the jury's award of compensatory and punitive damages between plaintiff Beran's state and federal sexual harassment claims and on the application of the cap on compensatory and punitive damages for Title VII claims set out in 42 U.S.C. § 1981a(b)(3). Filing 90 (ordering briefing); Filing 91 (revising briefing schedule). The Court will now resolve these remaining issues and direct entry of judgment accordingly.

## I.　INTRODUCTION

　　　　In this case, plaintiff Beran brought claims for sexual harassment by her co-worker Chris Eugene, in violation of 42 U.S.C. § 2000e-2 and Neb. Rev. Stat. § 48-1004, against her former employer, defendant VSL North Platte Court, LLC, doing business as Linden Court (Linden Court). At trial, which ran from May 9 through May 12, 2023, the state and federal claims were not differentiated. The jury found in favor of Beran and awarded $500,000 in total damages for emotional distress and $2,500,000 in punitive damages. Filing 86 (verdict form).

　　　　In a Memorandum and Order on Pre-Verdict Motions for Judgment as a Matter of Law (Order on Pre-Verdict Motions),[1] the Court held that Beran's Rule 50(a) motion was mooted by

---

[1] The Court had reserved ruling on these motions during trial.

1

the jury's verdict in her favor. Filing 90 at 3. The Court also denied both Linden Court's original and renewed pre-verdict Rule 50(a) motions finding the evidence sufficient for Beran's claim to go to the jury. Filing 90 at 3–5. The Court then turned to the issues of the statutory "caps" on damages and the allocation of damages to the state and federal claims. The Court concluded,

> [T]he Court anticipates that it will allocate the entirety of Beran's damages for emotional distress ($500,000) to her [Nebraska Fair Employment Act (NFEPA)] claim and allocate all punitive damages up to the statutory cap to her Title VII claim. *See Madison [v. IBP, Inc.]*, 257 F.3d [780,] 801 [(8th Cir. 2001), *vacated on other grounds*, 536 U.S. 919 (2002)]. However, the Court will not do so without allowing the parties the opportunity to be heard. After receiving the briefs ordered below, the Court will enter judgment on the jury's verdict, subject to the applicable statutory caps and allocations, and the time for the parties to file their post-trial Rule 50(b) motions, if any, will begin to run. *See* Fed. R. Civ. P. 50(b).

Filing 90 at 7. The Court then ordered the parties to submit simultaneous briefs and any evidence relevant to the applicable cap on compensatory and punitive damages under 42 U.S.C. § 1981a and the proper allocation of compensatory and punitive damages between the state and federal sexual harassment claims. Filing 90 at 8 (¶ 3). At the request of the parties, the Court revised the schedule to "stagger" the parties' submissions, beginning with Linden Court's brief, then Beran's response, and ending with Linden Court's reply. Filing 91.

The parties have now submitted their briefs and evidence on these issues. *See* Filing 93; Filing 94; Filing 100. Thus, these issues are ripe for decision.

## II. ALLOCATION OF DAMAGES

### A. Applicable Law

In its Order on Pre-Verdict Motions, the Court observed that a plaintiff cannot recover punitive damages under Nebraska law, so that punitive damages are unavailable on Beran's NFEPA claim for sexual harassment. Filing 90 at 6 (citing *O'Brien v. Cessna Aircraft Co.*, 903 N.W.2d 432, 458 (Neb. 2017), in turn citing Neb. Const. art. VII, § 5). The Court also observed that while punitive damages are allowed under federal law for a Title VII violation, the same statute

2

authorizing compensatory and punitive damages for discrimination claims under federal law also imposes "caps" on such damages based on the number of employees an employer "has" at the pertinent time. Filing 90 at 6 (citing 42 U.S.C. § 1981a). The Court recognized that "[a] district court has discretion to allocate or apportion a damage award between state and federal claims in cases such as this where the standards of liability are the same and the jury has not been asked to distinguish between claims in assessing damages." Filing 90 at 7 (citing cases, including *Madison*, 257 F.3d at 801).

### B. Confirmation of the Anticipated Allocation

In their supplemental briefing, the parties agree that the Court may allocate compensatory damages that the jury awarded to Beran's NFEPA claim and may allocate punitive damages that the jury awarded to Beran's Title VII claim, up to the applicable statutory cap. *See* Filing 93 at 2; Filing 94 at 1. Consequently, the Court now confirms its anticipated allocation of the entirety of the emotional distress damages that the jury awarded ($500,000) to Beran's NFEPA claim and all the punitive damages that the jury awarded, up to the applicable statutory cap, to Beran's Title VII claim.

### III. APPLICATION OF THE STATUTORY CAP

The Court turns to the determination of the applicable statutory cap on the punitive damages allocated to Beran's Title VII claim. On that issue there is less agreement between the parties.

### A. The Statutory Caps Provision

In its Order on Pre-Verdict Motions, the Court stated,

> [U]nder § 1981a, "[t]he sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed" certain dollar amounts based on the number of employees "in each of 20

3

> or more calendar weeks in the current or preceding calendar year" that the employer "has." *See* 42 U.S.C. § 1981a(b)(3); *Sheriff v. Midwest Health Partners, P.C.*, 619 F.3d 923, 932 (8th Cir. 2010) ("Section 1981a(b)(3) permits an award of noneconomic damages for intentional discrimination in employment but sets limits on their amount corresponding to the size of a defendant business.").

Filing 90 at 6. In a case cited by both parties here, the First Circuit Court of Appeals found that it was "clear" that by capping damages in Title VII cases, Congress "intend[ed] to protect employers, especially smaller employers, from ruinously large awards, and that the size of the employer was used as a rough measure for the degree of protection needed." *Hernandez-Miranda v. Empresas Diaz Masso, Inc.*, 651 F.3d 167, 173 (1st Cir. 2011).

> The statutory caps based on number of employees are the following:
>
> (A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;
>
> (B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and
>
> (C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and
>
> (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

42 U.S.C. § 1981a(b)(3).

> As this Court stated in its Order on Pre-Verdict Motions,
>
> No evidence admitted at trial establishes the number of employees Linden Court "had" during the relevant period. Thus, in order to enter judgment on the jury's verdict and the statutory caps, the Court must be provided with relevant evidence on the number of employees Linden Court had at the pertinent time.

Filing 90 at 6. The parties have now had the opportunity to submit evidence and present arguments on the number of employees for purposes of determining the applicable cap in this case.

There is some agreement between the parties on issues relevant to the determination of the applicable cap. The parties agree that the "current year" for § 1981a(b)(3) purposes is the year in which discrimination took place. Filing 93 at 2 ("Though Linden Court was unable to identify an Eighth Circuit case addressing the issue, other circuits have concluded the 'current year' for purposes of Section 1981a is the year in which the discrimination took place" (citing cases)); Filing 94 at 7 ("Plaintiff agrees that the proper point in time to count employees for the purposes of applying damages caps under 42 U.S.C. §1981a is the time of the discrimination."). In this case, the "current" calendar year would therefore be 2020, while the "preceding" calendar year would be 2019. The parties dispute the number of employees that Linden Court had during that relevant period, however.

### B. The Burden of Proof on the Applicable Cap

Before launching into an analysis of what statutory cap is applicable in this case, the Court believes it must give some consideration to the question of who bears the burden of proof on the applicable cap. The parties dispute that issue.

Beran was the first to raise this issue in her supplemental brief. She argues that Linden Court bears the burden of proof to show the relevant number of employees based on "due process concerns and the traditional burden of proof." Filing 94 at 2. She argues that the applicability of the statutory cap is an affirmative defense and that the number of employees is peculiarly within the knowledge of the employer. Filing 94 at 2. In its reply, Linden Court counters that the applicable cap in this case turns on Beran's contention that number of employees includes not just Linden Court's employees but also includes the employees of "integrated" employers. Filing 100 at 1. Linden Court argues that the burden is on Beran to demonstrate that the employees of any other "integrated" employer should be counted when determining the applicable cap. Filing 100 at 1–2.

5

It appears that the First Circuit Court of Appeals is the only federal appellate court that has addressed the issue of the burden of proof on application of the caps in § 1981a(b)(3). In *Hernandez-Miranda v. Empresas Diaz Masso, Inc.*, 651 F.3d 167 (1st Cir. 2011), a case mentioned above, the First Circuit observed, "Neither the text nor the legislative history of § 1981a(b)(3) speaks to who bears the burden of showing the relevant number of employees." 651 F.3d at 176. Nevertheless, the First Circuit decided that "due process concerns and the traditional burden of proof dictate that the defendant employer bear the burdens of production and persuasion on the caps." *Id.* The case now before this Court presents a situation that the First Circuit did not consider, however: Beran asserts that employees of "integrated" or "joint" enterprises should be counted as well as Linden Court's own employees for purposes of determining the applicable cap. Filing 94 at 1–2. Linden Court argues that Beran should bear the burden of proof on that issue. Filing 100 at 1–2.

In situations where one party alleged that entities were "integrated" or "joint" employers—albeit not situations involving application of the damages cap under § 1981a(b)(3)—the Eighth Circuit Court of Appeals imposed the burden of proof on the party making that allegation. *See, e.g., Johnson Tr. of Operating Engineers Loc. #49 Health & Welfare Fund v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 522 (8th Cir. 2020) (applying Minnesota "joint enterprise" standards in an ERISA case and holding that the trustees of a health and welfare plan failed to meet their burden to show that a company and its affiliates were a "joint enterprise"); *Davis v. Ricketts*, 765 F.3d 823, 827–29 (8th Cir. 2014) (holding on appeal of a summary judgment ruling in a Title VII discrimination case that plaintiff employees failed to demonstrate that two defendants were "integrated" such that together they had the requisite number of employees for Title VII to apply to them). These cases counsel imposing on Beran the burden of proof on the issue of whether

Linden Court and other entities are "integrated" or "joint" enterprises for purposes of determining the applicable damages cap.

The Court concludes that in this case, a burden-shifting analysis is appropriate. Linden Court bears the initial burden to show how many employees it had during the relevant time. *Hernandez-Miranda*, 651 F.3d at 176. Consistent with Eighth Circuit case law, the burden then shifts to Beran to prove her "integrated" or "joint" enterprise claim. *Cf. Johnson Tr. of Operating Engineers Loc. #49 Health & Welfare Fund*, 950 F.3d at 522; *Davis*, 765 F.3d at 827–29. That is the fighting issue for determining the appropriate cap in this case, and it is an issue that Beran injected. Fairness dictates that Linden Court should then have the opportunity to rebut Beran's evidence of "integration," so the burden shifts back to Linden Court to show that its count of its employees is correct. This shifting of burdens is consistent with the parties' "staggered" briefing of the "caps" issue.

### C. Linden Court Had More than 200 but Less than 501 Employees of Its Own at the Pertinent Time

The Court begins its analysis by looking at whether Linden Court has carried its initial burden to demonstrate how many employees it has. Unlike the defendant in *Hernandez-Miranda*, Linden Court has met its burden by presenting relevant evidence. *Compare* Filing 93 at 3 (citing Filing 92-1 at 1–2 (¶¶ 7–8) (Krupicka Dec.)), *with Hernandez-Miranda*, 651 F.3d at 175 (rejecting the defendant employer's argument to reduce damages because there was "no definitive evidence of record as to the number of employees it had at the time of discrimination" because the employer failed to carry its burden to present relevant evidence on the number of its employees).

More specifically, Linden Court presented evidence that in 2019 it "had at least 20 weeks in which it employed 200 or more employees." Filing 93 at 3 (citing Filing 92-1 at 1 (¶ 7) (Krupicka Dec.)). Linden Court also presented evidence that the highest number of employees on

Linden Court's payroll during any given week in 2019 and 2020 was 230 employees, during the weeks of June 1, 2020, and June 15, 2020. Filing 93 at 3 (citing Filing 92-1 at 2 (¶ 8) (Krupicka Dec.)). Beran never disputes this count of Linden Court's own employees. *See generally* Filing 94.

Even though Beran does not dispute this evidence, Linden Court's evidence reflects a misunderstanding of the applicable legal standard. The relevant question under the "caps" statute is not the number of weeks the employer had "200 or more employees," as Linden Court's declarant stated. *See* Filing 92-1 at 1 (¶ 7). Rather, the relevant question presented by Linden Court's assertion of its number of employees is whether during the pertinent time Linden Court had "more than 100 and fewer than 201 employees," under 42 U.S.C. § 1981a(b)(3)(B), or "more than 200 and fewer than 501 employees," under 42 U.S.C. § 1981a(b)(3)(C). Linden Court's evidence straddles the line between one cap and another. Notwithstanding this detail, Linden Court asserts that § 1981a(b)(3)(C) states the applicable cap of $200,000 based on the number of Linden Court's own employees. Filing 93 at 4. Linden Court never argues that a lower cap is or might be applicable in this case. *See generally* Filing 93. Not surprisingly, neither does Beran. *See generally* Filing 94. The Court takes Linden Court's evidence and argument as a concession that the applicable cap is $200,000 as set out in § 1981a(b)(3)(C). The remaining questions are whether Beran can carry her burden to invoke a higher cap and whether Linden Court can rebut Beran's evidence to show that its count of its own employees is correct.

### D. It Is Improper to Count Other Vetter Entities' Employees

As mentioned above, the fighting issue here is not how many employees Linden Court itself has, but whether the employees of any other entity should be added to the tally, pushing the total over the minimum required for a cap of $300,000 under 42 U.S.C. § 1981a(b)(3)(D). Beran has attempted to show that Linden Court's employee count is wrong because Linden Court is

8

"integrated" with other entities, resulting in enough employees to apply the cap in § 1981a(b)(3)(D). Beran has not met her burden to establish that other entities' employees should be counted with Linden Court's employees for purposes of determining the applicable cap where Linden Court has successfully rebutted her evidence.

   1. *The Parties' Arguments*

Anticipating part of Beran's argument, Linden Court argues that Linden Court and VSL Vetter Health Services, LLC (VHS)—the entity that "manages" Linden Court—are not "integrated enterprises" such that VHS's employees should be added to the count to determine the applicable statutory cap. Filing 93 at 4. Linden Court argues that Linden Court and VHS are legally separate and distinct entities, so their employees cannot be combined for purposes of § 1981a(b)(3) without considering four relevant factors set out in *Davis v. Ricketts*, 765 F.3d 823, 827 (8th Cir. 2014). Filing 93 at 4–5. Indeed, Linden Court contends that there is no evidence that could establish that Linden Court and VHS are an integrated enterprise. Filing 93 at 5. However, even if there were such evidence, Linden Court argues that VHS had at most 93 employees during 2019 and 2020, so the total number of employees of the two entities is at most 323, well short of the 501 employees required to impose the higher cap of $300,000 set out in § 1981a(b)(3)(D). Filing 93 at 6–7.

Beran counters that Linden Court is an integrated and/or joint employer with several other "Vetter entities," including VHS, and that the number of employees for all integrated "Vetter entities" greatly exceeds 500, so that the applicable cap is $300,000 as set out in § 1981a(b)(3)(D). Filing 94 at 1–2. Beran argues that she can overcome the presumption that a parent corporation is not the employer of its subsidiary's employees by proving that the parent and subsidiary are a single enterprise using the four factors set out in *Trevino v. Celanese*, 701 F.2d 397, 404 (5th Cir. 1983). Filing 94 at 3. Beran contends that both VHS and Vetter Senior Living, Inc., (VSL)—the entity that "owns" and "operates" Linden Court—are integrated with Linden Court. Beran points

9

out that VSL is also the sole member of Linden Court's limited liability company. Filing 94 at 4. Beran argues further that VSL is the parent entity for all twenty-four of VSL's care facilities, including Linden Court. Filing 94 at 4–5. Beran asserts that not only does VHS manage Linden Court for VSL, but VHS employs the administrators for all of VSL's locations, including Nolan Gurnsey, the Linden Court administrator. Filing 94 at 6–7. Beran argues that VSL represents on the home page of its website that from January 29, 2019, to July 21, 2020, it had 3,500 team members at its various care centers. Filing 94 at 7. Thus, she contends that if all three entities (Linden Court, VSL, and VHS)—or even just Linden Court and its parent VSL—are considered a single integrated enterprise, the number of employees exceeds the number required by § 1981a(b)(3) to impose a damages cap of $300,000. Filing 94 at 7–8.

In reply, Linden Court argues that much of the "evidence" Beran submits in support of her contentions is inadmissible hearsay, where VSL is not a party to this lawsuit, so its statements on its website are not admissions by a party opponent. Filing 100 at 1. Linden Court contends further that consideration of the relevant factors demonstrates that VSL and Linden Court are not integrated. Filing 100 at 2. Linden Court argues that Beran has presented no evidence of VSL's managers, personnel, payroll, insurance, office space, equipment, or anything else relevant to interrelated operations. Filing 100 at 2. Linden Court asserts that it does not share common management with VSL because Linden Court is managed and supervised by on-site staff and all planning and decision-making is locally based. Filing 100 at 2. Linden Court argues that it does not share centralized control of labor relations with VSL where Beran has shown only that VHS, a separate corporate entity from VSL and Linden Court, employs Linden Court's administrator. Filing 100 at 3. As to the last of the relevant factors, Linden Court argues that the fact that VSL is the sole member of Linden Court does not establish a degree of control that exceeds the control

10

normally exercised by a parent corporation. Filing 100 at 3. Linden Court argues that Beran's assertion that Linden Court is integrated with dozens of VSL subsidiaries is even further afield, where there is no evidence that any subsidiary controls the decisions of another. Filing 100 at 4.

### 2. *Applicable Standards*

In the circumstances of this case, it is not enough for Beran to argue that Linden Court has failed to provide evidence of the specific number of employees that a related entity claimed to have at the time she suffered discrimination. Filing 94 at 7. Rather, Beran's argument now places the burden on her to prove that Linden Court and the related entity or entities are properly considered an integrated employer. *Cf. Johnson Tr. of Operating Engineers Loc. #49 Health & Welfare Fund*, 950 F.3d at 522; *Davis*, 765 F.3d at 827–29.

As the Eighth Circuit Court of Appeals has explained, "An integrated enterprise is 'one in which the operations of two or more employers are considered so intertwined that they can be considered the single employer of the charging party.'" *Davis v. Ricketts*, 765 F.3d 823, 827 (8th Cir. 2014) (citing EEOC Compliance Manual § 2–III(B)(1)(a)(iii), and *Baker v. Stuart Broad. Co.*, 560 F.2d 389, 391–92 (8th Cir. 1977)). Indeed, Linden Court relies on factors set out in *Davis* to determine whether entities are "integrated," where the Eighth Circuit considered the question in the context of determining whether the "numerosity" requirement of Title VII was met—that is, whether the employees of separate entities could be combined to meet the 15 or more employees required for an entity to be subject to Title VII. *Davis*, 765 F.3d at 827. The Eighth Circuit explained,

> In determining whether separate entities should be treated as an integrated enterprise, we consider the following factors: (1) the degree of interrelation between the operations, (2) the degree to which the entities share common management, (3) the centralized control of labor relations, and (4) the degree of common ownership or financial control over the entities. *Baker [v. Stuart Broad. Co.],* 560 F.2d [389,] 391–92 [(8th Cir. 1977)]; *see also Sandoval v. Am. Bldg.*

*Maintenance Indus., Inc.*, 578 F.3d 787, 796 (8th Cir.2009); EEOC Compliance Manual § 2–III(B)(1)(a)(iii).

*Davis*, 765 F.3d at 827.

On the other hand, Beran relies on *Trevino v. Celanese*, 701 F.2d 397 (5th Cir. 1983), which is also a Title VII case. In *Trevino*, the Fifth Circuit concluded that whether promotion, or denial of promotion, from one entity to another nominally independent entity was actionable depended upon whether the companies had the required degree of interrelatedness to establish "joint employer" or "integrated enterprise" status. 701 F.2d at 403. The Fifth Circuit explained,

> Factors considered in determining whether distinct entities constitute an integrated enterprise are (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.

*Trevino*, 701 F.2d at 404. Thus, although the parties relied on different authorities, they relied on essentially identical factors.

### 3. The Pertinent Factors Demonstrate that Linden Court Is Not "Integrated" with Another Entity

Before considering the relevant factors in this case, it is well to remember that "[i]n situations where the court is asked to disregard the separate and distinct form of legal entities, the standards are narrow and rigorous, imposing a presumption of corporate separateness." *Davis*, 765 F.3d at 827. Beran has not overcome that presumption.

"The interrelation of operations factor examines whether the two entities share managers and personnel, payroll, insurance programs, office space, and equipment," and "[i]t also requires evaluation of whether the entities are operated as a single unit, and whether the entities' functions and purpose are similar or distinct." *Id.* (internal citations omitted). As Linden Court points out, Beran has not identified "managers and personnel, payroll, insurance programs, office space, and equipment" of the purportedly "integrated" entities, VSL and VHS. Filing 100 at 2. VHS, not VSL,

employs Linden Court's administrator, Nolan Gurnsey, but there is no evidence that Gurnsey has any management role in either VHS or VSL. This evidence is likewise insufficient to establish the second factor, the "common management" factor, which considers "whether the same individuals manage or supervise the different entities or whether the entities have common officers and boards of directors." *Id.* at 828 (internal quotation marks and citation omitted). The situation here involves even less "common management" than the situation in *Davis*, where a single person was CEO of one company and the sole owner of the other, and some individuals served as officers and directors of both entities, but the latter entity did not direct or oversee the other's corporate decision-making or facilities, or vice versa. *Id.* Beran has shown only that Linden Court's administrator was an employee of VHS.

In *Trevino*, the Fifth Circuit explained that "applying this four-part standard in Title VII and related cases" courts had "focused" on "centralized control of labor relations." 701 F.2d at 404. The Fifth Circuit then explained,

> This criterion has been further refined to the point that "[t]he critical question to be answered then is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Odriozola v. Superior Cosmetic Distributors, Inc.*, 531 F.Supp. 1070, 1076 (D.P.R.1982).

*Trevino*, 701 F.2d at 404. Similarly, in *Davis*, the Eighth Circuit Court of Appeals considered whether the entities set their own employment policies, work schedules, and salaries, and were responsible for hiring, firing, and paying their own employees. 765 F.3d at 828. The Eighth Circuit distinguished these circumstances from ones in which a parent corporation exercised significant control through the involvement or oversight of the subsidiary's personnel. *Id.*

Linden Court has pointed to the Linden Court Team Handbook as evidence that it is managed and supervised by on-site staff and its planning and decision-making is locally based. Filing 95-2 at 6. Beran offers nothing remotely sufficient to overcome that evidence. Indeed, she

13

offers no evidence that the entity that made the final decisions related to her was an entity other than Linden Court. The evidence at trial showed that the investigation of Beran's claims and the decision to terminate here were made locally by Linden Court's supervisory personnel and an administrator with responsibilities only with Linden Court, even though he was employed by VHS. *Trevino*, 701 F.2d at 404 (identifying who made the relevant employment decision as the focus of this factor). In another Fifth Circuit case cited by both parties, albeit for a different proposition, the Fifth Circuit recognized that to find that various subsidiaries of a single parent company are "joint" or "integrated" enterprises, "there must be evidence that [the subsidiaries] were instrumental in making the final decision" concerning the plaintiff. *Vance v. Union Planters Corp.*, 279 F.3d 295, 301 (5th Cir. 2002). As in *Vance*, "[t]here is no such evidence in the record" in this case. *Id.*

Finally, as to the degree of common ownership and financial control, courts ask "whether one company owns the majority or all shares of the other and if the entities share common officers or directors." *Davis*, 765 F.3d at 828–29 (internal quotation marks and citations available). However, the Eighth Circuit cautioned in *Davis* that "[a] single source of financial support by itself does not indicate that the enterprises are integrated," nor does the fact that one person or entity "controls two distinct corporations." *Id.* at 829. Even if VSL owns and operates numerous other subsidiaries, that is not enough to make them all "integrated" entities. *Id.*

In short, the Court concludes that only Linden Court's own employees are properly counted in this case for purposes of the statutory cap on damages. The Court now concludes that the applicable cap on punitive damages is $200,000 for "a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 1981a(b)(3)(C).

## IV. CONCLUSION

Upon the foregoing,

IT IS ORDERED that

1. the entirety of the emotional distress damages that the jury awarded ($500,000) is allocated to Beran's NFEPA claim and all the punitive damages that the jury awarded, up to the applicable statutory cap, are allocated to Beran's Title VII claim;

2. the applicable cap on punitive damages allocated to Beran's Title VII claim is $200,000 pursuant to 42 U.S.C. § 1981a(b)(3)(C).

Judgment shall enter accordingly.

Dated this 27th day of June, 2023.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge