IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KATRINA BERAN,

                              Plaintiff,                            **7:21CV5003**

        vs.

VSL NORTH PLATTE COURT LLC,                            **AMENDED
                                                  MEMORANDUM AND ORDER
                                                  REGARDING DEFENDANT'S
                              Defendant.          RENEWED MOTION FOR JUDGMENT
                                                  AS A MATTER OF LAW OR,
                                                  ALTERNATIVELY, NEW TRIAL OR
                                                  REMITTITUR**

## I.  INTRODUCTION

A jury trial was held in this case from May 9 through May 12, 2023, on plaintiff Katrina Beran's claims against her former employer, defendant VSL North Platte Court, LLC, doing business as Linden Court. Beran alleged claims for sexual harassment by her co-worker Chris Eugene, in violation of 42 U.S.C. § 2000e-2 and Neb. Rev. Stat. § 48-1004 (the Nebraska Fair Employment Practice Act (NFEPA)). The jury returned a verdict for Beran and awarded $500,000 in total damages for emotional distress and $2,500,000 in punitive damages. Filing 86. In a post-trial Memorandum Opinion, the Court *inter alia* denied the parties' pre-verdict Rule 50(a) motions on which the Court had reserved ruling. Filing 90 at 8. In another post-trial Memorandum Opinion and Order, the Court allocated all the emotional distress damages that the jury awarded to Beran's NFEPA claim and all the punitive damages that the jury awarded up to the applicable statutory cap to Beran's Title VII claim; determined that the applicable cap on punitive damages allocated to Beran's Title VII claim is $200,000 pursuant to 42 U.S.C. § 1981a(b)(3)(C); and directed entry of judgment accordingly. Filing 101 at 15.

This case is now before the Court on Linden Court's post-judgment Renewed Motion for Judgment as a Matter of Law or, Alternatively, New Trial or Remittitur. Filing 111. In the part of its Motion seeking judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), Linden Court asserts that there is insufficient evidence for a jury to find a hostile work environment or to demonstrate that Linden Court failed to take prompt remedial action in response to Beran's complaints about Eugene. Filing 111 at 2. Linden Court also asserts that there is insufficient evidence that Linden Court acted maliciously or with reckless indifference as required to award of punitive damages. Filing 111 at 2. Linden Court argues in the alternative that it is entitled to a new trial pursuant to Federal Rule of Civil Procedure 59(a) on Beran's sexual harassment claim and punitive damages for the same reasons it is entitled to judgment as a matter of law. Filing 111 at 2–3. Finally, Linden Court seeks a new trial, remittitur, or amendment of the verdict because the compensatory damages award of $500,000 is grossly excessive and unsupported by the limited evidence that Beran presented of emotional distress. Filing 111 at 3.

## II.  LEGAL ANALYSIS

### A.  Post-Judgment Relief Based Insufficient Evidence

Linden Court's primary challenges to the verdict are to sufficiency of the evidence, as a basis for either judgment as a matter of law or a new trial. Consequently, the Court begins its legal analysis with the standards for post-judgment challenges to the sufficiency of the evidence under Federal Rules of Civil Procedure 50(b) and 59(a).

    *1.*    *Applicable Standards*

      a.  Standards for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(b) provides for a renewed motion for judgment as a

matter of law as follows:

> **(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.** If
> the court does not grant a motion for judgment as a matter of law made under
> Rule 50(a), the court is considered to have submitted the action to the jury subject
> to the court's later deciding the legal questions raised by the motion. No later than
> 28 days after the entry of judgment--or if the motion addresses a jury issue not
> decided by a verdict, no later than 28 days after the jury was discharged--the
> movant may file a renewed motion for judgment as a matter of law and may
> include an alternative or joint request for a new trial under Rule 59. In ruling on
> the renewed motion, the court may:
>
> > **(1)** allow judgment on the verdict, if the jury returned a verdict;
> >
> > **(2)** order a new trial; or
> >
> > **(3)** direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b). The district court entertaining the renewed motion and the appellate court

on review "apply the same standard." *Walmart Inc. v. Cuker Interactive, LLC*, 949 F.3d 1101,

1108 (8th Cir. 2020); *Dean v. Cnty of Gage, Neb.*, 807 F.3d 931, 936 (8th Cir. 2015) (same).

Thus, "[j]udgment as a matter of law is only appropriate when no reasonable jury could have

found for the nonmoving party." *Meier v. City of St. Louis, Missouri*, 78 F.4th 1052, 1057 (8th

Cir. 2023) (quoting *Hopman v. Union Pac. R.R.*, 68 F.4th 394, 399 (8th Cir. 2023)); *Warren v.

Kemp*, 79 F.4th 967, 972 (8th Cir. 2023) ("Judgment as a matter of law is appropriate if there is

no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party."

(internal quotation marks and citation omitted)); *Cuker Interactive, LLC*, 949 F.3d at 1108 ("We

must affirm the jury's verdict unless there is a complete absence of facts supporting the verdict,

so that no reasonable jury could have found in the nonmoving party's favor." (internal citations omitted)).

More specifically,

> [the courts] (1) resolve factual conflicts in the nonmovant's favor, (2) take as true all facts supporting the nonmovant that the evidence tends to prove, (3) construe all reasonable inferences in the nonmovant's favor, and (4) deny the motion if the evidence would allow reasonable jurors to reach different conclusions. [*Liberty Mut. Fire Ins. Co. v. Scott*, 486 F.3d 418, 422 (8th Cir. 2007)].

*Cuker Interactive, LLC*, 949 F.3d at 1108; *accord Meier*, 78 F.4th at 1057 ("[C]onflicts in the evidence must be resolved in favor of the verdict." (quoting *Hopman*, 68 F.4th at 399). Drawing all reasonable inferences in the nonmovant's favor means that the court considers the evidence "without making credibility assessments or weighing the evidence." *Dean*, 807 F.3d at 936 (quoting *Phillips v. Collings*, 256 F.3d 843, 847 (8th Cir. 2001)); *accord Monohon v. BNSF Ry. Co.*, 17 F.4th 773, 780 (8th Cir. 2021) ("In reviewing the district court's decision, we may not weigh the credibility of evidence, and conflicts in the evidence must be resolved in favor of the verdict." (internal quotation marks and citation omitted)). Also, "[a] post-trial motion for judgment may not advance additional grounds that were not raised in the pre-verdict motion." *Olsen as Tr. for Xurex, Inc. v. Di Mase*, 24 F.4th 1197, 1202 (8th Cir. 2022) (quoting *Klingenberg v. Vulcan Ladder USA, LLC*, 936 F.3d 824, 834 (8th Cir. 2019), *reh'g denied*, No. 20-2771, 2022 WL 780571 (8th Cir. Mar. 15, 2022).

      b.  Standards for a New Trial

As indicated above, Federal Rule of Civil Procedure 50(b) expressly states that a renewed motion for judgment as a matter of law "may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). Because both Linden Court's motion for judgment as

4

a matter of law and its alternative motion for new trial are based on insufficiency of the evidence, the Court will also summarize here the standards for a new trial.

Rule 59 provides in pertinent part as follows:

**(a) In General.**

> **(1)** *Grounds for New Trial*. The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:

>> **(A)** after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]

Fed. R. Civ. P. 59. Rule 59(a) does not specify the reasons for which new trials have "heretofore been granted." *Id.* However, the Eighth Circuit Court of Appeals has explained that the "key question" on a motion for new trial pursuant to Rule 59(a) is "whether a new trial is necessary to prevent a miscarriage of justice." *Wallace v. Pharma Medica Rsch., Inc.*, 78 F.4th 402, 405 (8th Cir. 2023); *Williams v. Baum*, 48 F.4th 571, 573 (8th Cir. 2022) (recognizing that "the key question [is] whether a new trial is necessary to prevent a miscarriage of justice."); *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 646 n.5 (8th Cir. 2022) ("A new trial should be granted if necessary to prevent a miscarriage of justice." (internal quotation marks and citation omitted)).

One reason for a new trial—and the one asserted here—is insufficiency of the evidence to support the verdict. See *Gruttemeyer*, 31 F.4th at 646 n.5; *Monohon*, 17 F.4th at 784 ("A new trial is warranted when the outcome is against the great weight of the evidence so as to constitute a miscarriage of justice." (quoting *Bank of Am., N.A. v. JB Hanna, LLC*, 766 F.3d 841, 851 (8th Cir. 2014)). However, "[a] new trial should be granted only if the evidence weighs heavily against the verdict." *White Commc'ns, LLC*, 4 F.4th at 613–14 (quoting *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 462 (8th Cir. 2013)). Furthermore, "[d]enial of a motion for a new trial where the moving party argued the evidence was insufficient to support the verdict is 'virtually

5

unassailable' on appeal, and should be reversed 'only if the evidence weighs heavily against the verdict.'" *Id.* (quoting *White Commc'ns, LLC*, 4 F.4th at 613–14). "In determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence—it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *Wilson v. Lamp*, 995 F.3d 628, 631 (8th Cir. 2021) (quoting *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992)).

With these standards in mind, the Court turns to consideration of Linden Court's challenges to the sufficiency of the evidence to support the jury's verdict in favor of Beran.

### 2. *Sufficiency of the Evidence*

Linden Court challenges the sufficiency of the evidence to demonstrate a hostile work environment; to demonstrate that Linden Court failed to take prompt remedial action in response to Beran's complaints about Eugene; and/or to support an award of punitive damages. Filing 111 at 2. The Court will consider the evidence on these three matters in turn.

### c. The Evidence of a Hostile Environment Was Sufficient

Linden Court argues that Beran's evidence showed only isolated events of physical contact and misogynistic comments neither of which is sufficiently severe nor pervasive to establish a hostile work environment. Filing 112 at 3. Linden Court relies heavily on *Watson v. Heartland Health Laboratories, Inc.*, 790 F.3d 856 (8th Cir. 2015), and *LeGrand v. Area Resources for Community & Human Services*, 394 F.3d 1098 (8th Cir. 2005), as demonstrating that limited instances of offensive touching are insufficient. Filing 112 at 4–7.

Linden Court is not entitled to judgment as a matter of law on the ground that no reasonable jury could have found for Beran, see *Meier*, 78 F.4th at 1057, or a new trial on the ground that the outcome is against the great weight of the evidence so as to constitute a

miscarriage of justice, see *Monohon*, 17 F.4th at 784. As this Court previously explained in this case, Beran bore the burden "to demonstrate that the harassment she experienced was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Hairston v. Wormuth*, 6 F.4th 834, 841 (8th Cir. 2021). As the Eighth Circuit explained,

> Assessing whether [a plaintiff] has met this burden, "we look at the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with [her] work performance." *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 420 (8th Cir. 2010) (cleaned up). Because our focus is on the "working environment," we have held that "[a]llegations of a few isolated or sporadic incidents [of harassment] will not suffice," *Nitsche [v. CEO of Osage Valley Elec. Coop.]*, 446 F.3d [841,] 846 [(8th Cir. 2006)], unless those incidents are "extremely serious," *Hales v. Casey's Mktg. Co.*, 886 F.3d 730, 735 (8th Cir. 2018). Rather, for the purposes of Title VII, a hostile work environment is one in which the alleged harassment has "poisoned," *Tuggle v. Mangan,* 348 F.3d 714, 720 (8th Cir. 2003) (quoting *Scusa v. Nestle U.S.A. Co.,* 181 F.3d 958, 967 (8th Cir. 1999)), or "permeated," *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the plaintiff's working conditions. *See Harris*, 510 U.S. at 21, 114 S.Ct. 367 ("When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." (cleaned up)).

*Hairston*, 6 F.4th at 841.

As Beran argues, considering the totality of the circumstances, see *id.*, and considering factual conflicts, the evidence, and all reasonable inferences in Beran's favor, the evidence would at best allow reasonable jurors to reach different conclusions, so Linden Court's motion for judgment as a matter of law must be denied. See *Cuker Interactive, LLC*, 949 F.3d at 1108. The evidence suggests that Beran was subjected not just to offensive utterances, but to physically threatening conduct. See *Hairston*, 6 F.4th at 841. The physically threatening conduct included Eugene groping Beran's "butt" in the galley area, Filing 96 at 70:10-20; pushing Beran up

7

against a wall while groping her breasts with both hands, Filing 96 at 72:9–73:8; grabbing her hand and refusing to let go despite repeated requests, Filing 96 at 74:8–75:5; and elbowing Beran in the chest when she attempted to enter the kitchen galley, Filing 96 at 80:13–81. The Court reiterates its prior conclusion that "the evidence that Eugene shoved Beran against a wall and groped her breasts was a single incident of sufficient seriousness to submit the case to a jury." Filing 90 at 4. The Court now adds, evidence of that incident was sufficient to deny Linden Court's Renewed Motion for Judgment as a Matter of Law. *Cuker Interactive, LLC*, 949 F.3d at 1108. Even relying on the Court's own reading of the evidence, see *Wilson*, 995 F.3d at 631, there is no basis for a new trial, because the jury's finding of severe or pervasive harassment is not against the great weight of the evidence, so as to constitute a miscarriage of justice. See *Monohon*, 17 F.4th at 784.

*Watson* and *LeGrand* on which Linden Court relies do not require a contrary conclusion. In *Watson*, the alleged harassment included "a sexual touching, a single racial slur, four sexually degrading slurs, and a threat" over ten working days. 790 F.3d at 862. The Eighth Circuit relied on the "brief" duration of the harassment and pointed out that, because the plaintiff only worked "for a couple of hours a day," "she was not subject to [the alleged harasser's] conduct throughout her workday," which distinguished her case from others finding a hostile work environment existed. *Id.*

In *LeGrand*, the plaintiff alleged unwelcome sexual advances on three separate occasions. 394 F.3d at 1100. In the first, the plaintiff claimed the alleged harasser asked the plaintiff "to watch pornographic movies with him and 'to jerk off with him' to relieve stress." *Id.* at 1100. In the second, about eight months later, the alleged harasser "(1) mentioned the pornographic movies again; (2) suggested [the plaintiff] would advance in the company, if he

8

watched 'these flicks' and jerk[ed the alleged harasser's] dick off'; (3) 'kissed [the plaintiff] in the mouth; (4) grabbed [the plaintiff's] buttocks; and (5) 'reached for [the plaintiff's] genitals.'" *Id.* The third incident, a month later, involved the alleged harasser "briefly grip[ping] [the plaintiff's] thigh while each were seated at a table during a meeting." *Id.* The Eighth Circuit found the alleged harasser's conduct "did not rise to the level of actionable hostile work environment sexual harassment." *Id.* at 1102. The Eighth Circuit explained,

> There can be no doubt [the alleged harasser's] actions, admitted and alleged, ranged from crass to churlish and were manifestly inappropriate; however, the three isolated incidents, which occurred over a nine-month period, were not so severe or pervasive as to poison [the plaintiff's] work environment.

*LeGrand*, 394 F.3d at 1102–03.

Unlike the situation in either *Watson* or *LeGrand*, Beran was subjected to concentrated harassment over three full-time shifts—not incidents scattered over ten days or nine months. The incidents Beran suffered also involved multiple incidents of physically threatening conduct—not just a single incident of sexual touching or a single grabbing of the buttocks—as well as other verbal harassment. The harassment she suffered was sufficiently different in scale and effect on her working environment from the conduct at issue in *Watson* and *LeGrand* for a reasonable jury to find in her favor. *Meier*, 78 F.4th at 1057 (judgment as a matter of law standard). Even relying on the Court's own reading of the evidence, *see Wilson*, 995 F.3d at 631, Beran's circumstances were also sufficiently different from those in *Watson* and *LeGrand* that the jury's verdict is not a miscarriage of justice warranting a new trial. *See Wallace*, 78 F.4th at 405 (new trial standard). Linden Court's assertion that Eugene's conduct toward Beran was "objectively less severe than the conduct the Eighth Circuit found insufficient to demonstrate a hostile work environment in other cases, including *Watson* and *LeGrand*," Filing 112 at 8, does not stand up to scrutiny.

9

Linden Court is not entitled to judgment as a matter of law or a new trial on the issue of insufficient evidence of a sexually hostile work environment.

    d.   The Evidence of a Lack of Prompt and Effective Remedial
          Action Was Sufficient

Next, Linden Court argues that no reasonable jury could have found Linden Court's response was not a prompt remedial action under the law, where it halted Eugene's offending conduct. Filing 112 at 10. Linden Court argues that it responded swiftly to Beran's complaints on January 27, 2020, by moving Beran to Dogwood floor where she would not have to work with Eugene, interviewing staff members, and on January 30, 2020, reprimanding Eugene. Filing 112 at 16. Most importantly, Linden Court contends, after Moore had a "crucial conversation" with Eugene, his harassing behavior stopped. Filing 112 at 17. Thus, Linden Court contends that its remedial action was effective as a matter of law. Filing 125 at 10.

"Even in the face of constructive notice, an employer is not liable if it takes prompt remedial action that is reasonably calculated to stop the harassment." *Sellars v. CRST Expedited, Inc.*, 13 F.4th 681, 699 (8th Cir. 2021), *cert. denied*, 142 S. Ct. 1361 (2022). Complaints that the employer's investigation was flawed are not enough to establish liability; instead, "where the employer responds to a sexual harassment complaint in such a way as to promptly stop the sexual harassment, there is no basis for finding employer's postcomplaint actions not sufficiently corrective." *Weger v. City of Ladue*, 500 F.3d 710, 723 (8th Cir. 2007). "When considering the '[remedial] options available to the employer,' [the Eighth Circuit] ha[s] included 'employee training sessions, transferring the harassers, written warnings, reprimands in personnel files, or termination,' as acceptable options, depending on the particulars of the case." *E.E.O.C. v. CRST Van Expedited, In*c., 679 F.3d 657, 693 (8th Cir. 2012) (quoting *Carter v. Chrysler Corp.*, 173

10

F.3d 693, 702 (8th Cir. 1999)). "Although employers may be required to escalate their response to repeated harassment by the same coworker, [the Eighth Circuit] ha[s] not adopted the Ninth Circuit's requirement that an employer's remedial response to harassment must deter future harassment by any offender in order to be reasonable." *Sellars*, 13 F.4th at 699 (citations omitted).

Linden Court's assertions of the adequacy of its remedial actions are difficult to square with the evidence at trial. Both Linden Court's Assistant Director of Nursing Marianne Harless and Linden Court's Director of Nursing Jasmine Moore repeatedly—and in Moore's case, quite vehemently—denied every receiving a report from Beran of sexual harassment by Eugene and denied that any investigation they did was of sexual harassment. *See* Filing 97 at 20 (Transcr. 166:18–23) (Harless's testimony that she never received or investigated a complaint of sexual harassment); Filing 97 at 33 (Transcr. 179:16-21) (Harless's testimony denying that Beran ever talked to her about Eugene pinching her butt, groping her breasts, and telling her to pull the rag out); Filing 97 at 52 (Transcr. 198:3–8) (Harless's testimony that she never investigated Eugene for harassment); Filing 97 at 99–106 (Transcr. 245:7–252:15) (Moore's repeated denials that Beran made any complaint of sexual or physical harassment, so she did not follow the sexual harassment investigation policy). This testimony conflicted with Beran's testimony about what she reported. The Court concluded in its Memorandum and Order denying the pre-judgment motions for judgment as a matter of law that a reasonable jury could conclude that it was not enough that Linden Court investigated the conduct that Linden Court claimed Beran told her supervisors about, if the jury concluded that the supervisors to whom she made her complaints were closing their eyes to other misconduct or redefining potentially sexually harassing conduct to avoid treating it as sexual harassment. *See* Filing 90 at 4. In the post-judgment context, the

Court reiterates this conclusion about what a reasonable jury could find. *Meier*, 78 F.4th at 1057 (judgment as a matter of law standard). The Court also declines to grant a new trial on the basis of a miscarriage of justice, even relying on the Court's own reading of the evidence. *See Wilson*, 995 F.3d at 631.

Linden Court's central assertion now is that even if the investigation of Beran's claims was inadequate, Eugene's harassment stopped after Moore gave him a "crucial conversation" warning, so Linden Court's response was adequate as a matter of law and Linden Court cannot be liable. Filing 112 at 17; Filing 125 at 10. Although Eighth Circuit precedent is clear that the employer's remedial action does not actually have to stop the harassment to be adequate, *see Sellars*, 13 F.4th at 699, Linden Court has not cited and the Court has not found controlling precedent holding that if harassment stops after the employer takes any action at all, the employer cannot be liable as a matter of law. Even *Weger* on which Linden Court relies recognizes there must be a causal relationship between the employer's response and the cessation of the harassment, because that decision states that if the employer responds "in such a way" as to stop the harassment, the corrective action was adequate. 500 F.3d at 723 ("[W]here the employer responds to a sexual harassment complaint in such a way as to promptly stop the sexual harassment, there is no basis for finding employer's postcomplaint actions not sufficiently corrective.").

In this case, a reasonable jury could conclude on the basis of the evidence presented at trial that Eugene's harassment of Beran ceased after the "crucial conversation" with Moore only because Eugene and Beran did not work together again until February 6, 2020, and Beran was terminated February 7, 2020, Filing 96 at 124:15–22, and not because Linden Court responded "in such a way" as to stop the harassment. *See Weger*, 500 F.3d at 723. That conclusion is

particularly reasonable in light of evidence that Eugene had been counseled about his "negativity" and to improve his conduct toward coworkers twice in the two weeks preceding his harassment of Beran and his "crucial conversation" with Moore, and he had also received prior discipline for asking people about their marital status, all with no apparent deterrent effect. Filing 97 at 111 (Transcr. 257:11–258:10).

Further, the jury could have concluded that Beran told the executives at Linden Court about the harassment but they did nothing about it. The evidence the jury heard in this case included testimony from Beran that she made complaints to management about Eugene harassing her. The jury also heard testimony from the defendant's executive team that Beran never complained of harassment by Eugene. If the jury believed Beran made the complaints she contends that she made, and likewise concluded the executive team did nothing about the complaints, this would likewise support the verdict reached by the jury. It is difficult to contend Linden Court acted "in such a way" as to stop the harassment if they contend they did not know about the harassment.

Therefore, even relying on the Court's own reading of the evidence, *see Wilson*, 995 F.3d at 631, the Court does not find that the jury's verdict is a miscarriage of justice warranting a new trial. *See Wallace*, 78 F.4th at 405 (new trial standard). Linden Court is not entitled to judgment as a matter of law or a new trial on the issue of insufficient evidence that it failed to take prompt remedial action calculated to end Eugene's harassment of Beran.

### e.   The Evidence Supporting Punitive Damages Was Sufficient

Linden Court also argues that the jury improperly awarded punitive damages because the jury unreasonably concluded that Moore and Harless acted with malice or reckless indifference. Filing 112 at 18. Indeed, Linden Court argues that punitive damages are not available against an

13

employer that made a good faith effort to prevent harassment, which the evidence shows Linden

Court did. Filing 112 at 18.

As the Eighth Circuit Court of Appeals has explained,

> Federal law imposes a formidable burden on plaintiffs who seek punitive damages in a hostile work environment action premised under Title VII. An employee seeking punitive damages from an employer as a result of sexual harassment perpetrated by a fellow employee must show that the employer acted with actual malice or deliberate indifference to her federally protected right. *See Varner v. Nat'l Super Markets, Inc.*, 94 F.3d 1209, 1214 (8th Cir.1996), *cert. denied*, 519 U.S. 1110, 117 S.Ct. 946, 136 L.Ed.2d 835 (1997); 42 U.S.C. § 1981a(b)(1). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 119 S.Ct. 2118, 2124, 144 L.Ed.2d 494 (1999); *see also, Dhyne v. Meiners Thriftway, Inc*., 184 F.3d 983, 987–88 (8th Cir.1999).

*Henderson v. Simmons Foods, Inc*., 217 F.3d 612, 618 (8th Cir. 2000); *accord Rowe v. Hussmann Corp*., 381 F.3d 775, 783 (8th Cir. 2004) ("Title VII allows punitive awards in the 'narrow class of cases' where the employer acts with malice or reckless indifference to the federally protected rights of the employee."). However, this standard does not require "egregious misconduct." *Rowe*, 381 F.3d at 783.

In *Rowe*, the Eighth Circuit held that punitive damages were appropriate where a supervisor in the relevant department "knew of this abusive and degrading environment, yet not only allowed it to persist but often defended [the harasser] by suggesting that [the harasser] was uneducated and did not know any better." *Id*. at 784. The Court explained, "Recklessness and outrageousness may be inferred . . . where an employee's repeated complaints to supervisors fall on deaf ears." *Id*. (citing *Henderson*, 217 F.3d at 619). In *Henderson*, the Eighth Circuit found that punitive damages were appropriate in part because the company had responded only once to the plaintiff's complaints over two years and that "response at best can be characterized as half-

hearted," and in part because the supervisors actually impeded the plaintiff's attempts to gain relief. 217 F.3d at 619.

As the Court previously observed, although Linden Court had an anti-harassment policy, a reasonable jury could conclude from the evidence presented at trial that Linden Court made so little effort to enforce that policy or to respond to complaints when made as to establish Linden Court's reckless disregard of Beran's right to be free of harassment. Filing 90 at 5. Again, a reasonable jury could conclude from the evidence at trial that Eugene had been counseled about his "negativity" and to improve his conduct toward coworkers twice in the two weeks preceding his "crucial conversation" with Moore and had also received prior discipline for asking people about their marital status, all with no apparent deterrent effect. Filing 97 at 111 (Transcr. 257:11–258:10). This evidence was such that a reasonable jury could conclude that the supervisors to whom Beran made her complaints were closing their eyes to other misconduct or redefining potentially sexually harassing conduct to avoid treating it as sexual harassment. This is comparable to the situation in *Rowe* in which "recklessness and outrageousness" could be inferred "where an employee's repeated complaints to supervisors fall on deaf ears." 381 F.3d at 783 (citing *Henderson*, 217 F.3d at 619). Also, as in *Henderson*, a reasonable jury could conclude that Moore's and Harless's response to Beran's complaints—especially where they declined even to acknowledge that the complaints involved sexual harassment or to investigate them as claims of sexual harassment—"at best can be characterized as half-hearted," and that such minimizing of Beran's complaints actually impeded her attempts to gain relief. 217 F.3d at 619. Thus, judgment as a matter of law on punitive damages is inappropriate. *See Meier*, 78 F.4th at 1057 (judgment as a matter of law standard). The Court also declines to grant a new trial

15

on the basis of a miscarriage of justice, even relying on the Court's own reading of the evidence. *See Wilson*, 995 F.3d at 631.

Linden Court is not entitled to judgment as a matter of law or a new trial on the basis of insufficiency of the evidence to support punitive damages.

### B. Remittitur for Excessive Compensatory Damages

The last part of Linden Court's post-judgment Motion is on a somewhat different basis. Linden Court argues that the limited evidence of emotional distress damages presented by Beran at trial was insufficient to support a compensatory damages award of $500,000, so that the award is grossly excessive. Filing 112 at 22. Linden Court argues that if the Court does not grant judgment as a matter of law or a new trial on other grounds, the Court should order that the compensatory damages award be remitted or, alternatively, order a new trial on compensatory damages alone. Filing 112 at 22. Linden Court asserts that the permissible range of compensatory damages in employment cases involving a "severe degree" of emotional distress is between $300,000 and $500,000. Filing 112 at 24–25. Linden Court argues that Beran's evidence shows only "garden variety" emotional distress, so a remittitur to $50,000 or a new trial is appropriate. Filing 112 at 27, 30.

As the Eighth Circuit Court of Appeals has explained,

> We review a district court's decision to grant or deny a request for a remittitur for an abuse of discretion, keeping in mind a verdict is not excessive unless the result is monstrous or shocking. *Thorne v. Welk Inv., Inc.*, 197 F.3d 1205, 1211 (8th Cir.1999). In general, "awards for pain and suffering are highly subjective and should be committed to the sound discretion of the jury, especially when the jury is being asked to determine injuries not easily calculated in economic terms." *Frazier v. Iowa Beef Processors, Inc.*, 200 F.3d 1190, 1193 (8th Cir.2000).

*Townsend v. Bayer Corp.*, 774 F.3d 446, 466 (8th Cir. 2014); *Rowe v. Hussmann Corp.*, 381 F.3d 775, 783 (8th Cir. 2004) (stating the "shocks the conscience" standard); *Mathieu v. Gopher News Co.*, 273 F.3d 769, 783 (8th Cir. 2001) (stating the "shocks the conscience" standard). The Eighth Circuit has also observed that "the appellate court must 'recogniz[e] that the trial court has heard the evidence and knows the community's standards.'" *Mathieu*, 273 F.3d at 783 (quoting *Norton v. Caremark, Inc.*, 20 F.3d 330, 340 (8th Cir. 1994)).

In *Townsend*, the Eighth Circuit Court of Appeals found the jury's award of $568,000 for a two-and-a-half-year period of untreated depression and sleeplessness to be excessive as a matter of law but because of evidence that the financial difficulties the plaintiff claimed caused his emotional distress began before he was terminated. 774 F.3d at 467. It concluded, instead, that an award no greater than $300,000 was justified by the evidence. *Id.* In *Mathieu*, the conscience of the Eighth Circuit was not shocked by an award of emotional distress of $165,000 where the plaintiff testified that he lost his job of thirty-four years, was forced to reduce his standard of living, and became depressed. 273 F.3d at 783. The court observed that "another jury may have come out with a lower figure, but yet another may have awarded a higher amount." *Id.* In *Rowe*, the Eighth Circuit sustained an award of $500,000 for emotional distress damages from sexual harassment where the plaintiff testified that she was in constant fear of her harasser, experienced panic attacks, moved to a different home, purchased mace, ate lunch and took breaks in the women's restroom to avoid contact with her harasser, and testified to adverse effects on her relationship with her children. 381 F.3d at 783. The plaintiff also presented testimony from a treating psychologist that the plaintiffs suffered from an anxiety disorder and that her prognosis was poor. *Id.*

17

In *Renninger v. Manley Toy Direct L.L.C.*, No. 4:10-CV-00400 - JEG, 2016 WL 11849241 (S.D. Iowa July 7, 2016), on which Linden Court places great emphasis, the district court granted a new trial on emotional distress damages unless the plaintiff accepted "remittitur of all past emotional distress damages in excess of $300,000, and all future emotional distress damages in excess of $100,000," or a total of $400,000. 2016 WL 11849241, at *11. This was a reduction from the jury's award of past emotional distress damages in the amount of $1,000,000 and future emotional distress in the amount of $800,000. *Id.* at *2. The district court stated that a review of precedent indicated that "a seven-figure emotional damages award is unprecedented in this circuit"; that courts had upheld $300,000 and $500,000 emotional damages awards upon "a showing of a severe degree of emotional distress"; and that "flagrant or continuing injurious conduct, the specific circumstances of the plaintiff, or both" support such awards. *Id.* at *10.

Admittedly, the award of damages for emotional distress to Beran is substantial—even high—in comparison to the awards in *Townsend* and *Mathieu*. *See Townsend*, 774 F.3d at 467 (ordering remittitur from $568,000 to $300,000); *Mathieu*, 273 F.3d at 783 (upholding an award of $165,000). However, the Court observes that the decision in *Townsend* is now almost nine years old and the decision in *Mathieu* is now more than two decades old. Also, the award in *Rowe* in the same amount as the jury awarded Beran here was based on emotional distress that was at least arguably more significant than Beran's. *See Rowe*, 381 F.3d at 783 (upholding award of $500,000). However, that decision is now nearly two decades old. Thus, these precedents do not convince the Court that the award in Beran's case "shocks the conscience" or is "monstrous." *See Townsend*, 774 F.3d at 466 (stating this standard).

Beran argues that the award is appropriate "in light of the flagrant physically threating conduct coupled with Beran's specific circumstances of having suffered a sexual assault when

she was 16." Filing 122 at 10. Beran testified that when Eugene put his hands on her, "it made [her] feel disgusting, degraded, that [she] was being belittled." Filing 96 at 106:2–3. When she reported the harassment to Harless and Moore, Beran was crying, and "was being made to feel like a victim, [and] that's not how I wanted to feel," and she was feeling "hurt," "scared," "anxious," and "depressed about the situation in general." Filing 96 at 106:5–12. Beran had been diagnosed with "severe PTSD" after the sexual assault when she was 16, and when Eugene's harassment occurred, she "just felt degraded and belittled; and instead of feeling like a survivor from my past experience, I was meant to feel like I was a victim again; and I would go home and I would feel disgusting," and she would ask herself "what [she] did to do this." Filing 96 at 106:20–25. She also blamed herself, had "a lot of anxiety attacks," and belittled herself. Filing 96 at 106:25–107:2. Beran felt like she had made a lot of headway recovering after the sexual assault five year earlier, was no longer taking medication, and was functioning on a daily basis. Filing 96 at 108:4–16. However, she testified that because of Eugene's harassment her PTSD "came back to a pretty severe degree" and her depression "caused [her] to not want to get out of bed most days." Filing 96 at 109:6. She "couldn't stand to be outside" and "would often just sleep 20 hours a day." Filing 96 at 9–10. She relied on medication again, she started drinking, and she would not wear makeup or dress up to avoid feeling objectified. Filing 96 at 109:13–17. Beran testified that while she eventually improved with a lot of help and encouragement, she still suffers effects of Eugene's harassment such as reluctance to be alone with male coworkers. Filing 96 at 110:14–16. She testified that her "greatest loss . . . was the fact that [she] lost [herself] again just when [she] had found [herself] again." Filing 96 at 117:10–11. Linden Court did not cross-examine Beran or make any effort to rebut or refute any of Beran's testimony about her emotional distress.

19

As the Eighth Circuit Court of Appeals has made clear, "awards for pain and suffering are highly subjective and should be committed to the sound discretion of the jury, especially when the jury is being asked to determine injuries not calculated in economic terms." *Townsend,* 774 F.3d at 466 (quoting *Frazier,* 200 F.3d at 1193). That is certainly the case with emotional distress in Beran's case. Furthermore, this court heard the evidence and knows the community standards. *Mathieu,* 273 F.3d at 783. As in *Mathieu,* it is possible that "another jury may have come out with a lower figure, but yet another may have awarded a higher amount." *Id.* Also, this case involved "flagrant and continuing injurious conduct," and Beran's specific circumstances as a prior victim of sexual assault, both of which also supports the award. *Rennenger,* 2016 WL 11849241, at *10. The compensatory damages award here also falls within the range of awards set out in *Rennenger* for what the jury here clearly found to be severe emotional distress, even if the award was higher than the award in *Rennenger. Id.* at *10.

Thus, the Court concludes that the jury's award of $500,00 in damages for Beran's emotional distress does not "shock the conscience," so the Court denies Linden Court's request for either remittitur or a new trial on compensatory damages. *See Townsend,* 774 F.3d at 466 (standard for remittitur).

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Linden Court's post-judgment Renewed Motion for Judgment as a Matter of Law or, Alternatively, New Trial or Remittitur, Filing 111, is denied in its entirety.

Dated this 18th day of October, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge