IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KATRINA BERAN,<br><br>                Plaintiff,<br><br>   vs.<br><br>VSL NORTH PLATTE LLC,<br><br>                Defendant. | 7:21CV5003<br><br>**MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** |

Plaintiff went to trial on the only two of her original eight claims that survived summary judgment. Filing 40 at 30. At trial, she won on her claims alleging a sexually hostile work environment in violation of Title VII and the Nebraska Fair Employment Practices Act (NFEPA). The jury initially awarded her $3,000,000, consisting of $500,000 in emotional distress damages and $2,500,000 in punitive damages. Filing 86 at 1–2. The Court later reduced the jury's award after application of the statutory caps to $500,000 in damages for emotional distress allocated to Plaintiff's NFEPA claim and $200,000 in punitive damages allocated to her Title VII claim pursuant to 42 U.S.C. § 1981a(b)(3)(C). Filing 101 at 15.

Plaintiff now seeks attorneys' fees in the amount of $128,153 and costs in the amount of $904.06. Filing 103 at 4 (¶ 12). For the reasons set forth below, the Court finds that Plaintiff's lead attorney's hourly rate of $350 is excessive and should be reduced to $300. Additionally, the overall award should be partially reduced by 15% to account for Plaintiff's partial success on all of her alleged claims.

### I. INTRODUCTION

#### A. Factual Background

Plaintiff hired Jennifer Turco Meyer in November 2020 as her lead attorney. Filing 103 at 1. Attorney Meyer was admitted to practice law in Missouri in 2007 and in Nebraska in 2008.

1

Filing 104-1 at 1 (¶ 5). She has been practicing plaintiffs' employment litigation since 2007 and has been at Dyer Law since 2015. Filing 104-1 at 2 (¶ 8). This is her second jury trial as lead counsel, but she has represented plaintiffs in over 100 employment law and civil rights cases, been lead counsel on fifteen bench trials, and litigated over 100 workers' compensation cases and 65 personal injury cases. Filing 104-1 at 2 (¶ 9). From January 1, 2020, to December 31, 2021, Attorney Meyer's hourly rate was $300. Filing 104-1 at 3 (¶ 13). She billed 23.3 hours to Plaintiff in November 2020 to December 2021, totaling $6,990 for her work. Filing 104-1 at 26. From January 1, 2022, to the present, Attorney Meyer's hourly rate has been $350. Filing 104-1 at 3 (¶ 14). From January 2022 to June 2023, Attorney Meyer billed 312.1 hours to Plaintiff, totaling $109,235. Filing 104-1 at 33. The total amount Attorney Meyer is requesting is $116,225. Filing 104-1 at 33.

Thomas Rowen was brought on as co-counsel to assist Attorney Meyer with jury selection. Filing 115 at 6. Attorney Rowen was admitted to practice law in Nebraska in August 1999 and has been at Dyer Law since 2019. Filing 104-2 at 1 (¶ 5, 9). Attorney Rowen has tried nineteen jury cases as lead counsel, fifteen criminal matters, three personal injury cases, and one civil rights claim. Filing 104-2 at 2 (¶ 10). In his capacity as co-counsel, Attorney Rowen assisted with jury research, voir dire, and jury selection during Plaintiff's jury trial. Filing 104-2 at 3 (¶ 12). As of January 1, 2022, his hourly rate was $300 and he billed 7.6 hours from May 3, 2023, to May 10, 2023. Filing 104-2 at 3 (¶ 11); Filing 104-2 at 4. The total amount Attorney Rowen is requesting is $2,280. Filing 104-2 at 4.

Plaintiff is also seeking fees for paralegal time. Filing 103 at 3 (¶ 8). The hourly rate for each paralegal is $120. Filing 103 at 3 (¶ 8). The number of hours billed is 28.3 hours for Lori Schmidt, 32.6 hours for Tania Lohrman, and 19.5 hours for Brenden Hunt, which is 80.4 hours in

total. Filing 103 at 3 (¶ 8). The amount Plaintiff is requesting for work completed by the paralegals is $3,396 for Lori Schmidt, $3,912 for Tania Lohrman, and $2,340 for Brenden Hunt, which is $9,648 in total. Filing 103 at 3 (¶ 8). In total, Plaintiff is requesting $128,153 in attorneys' fees. Filing 103 at 4 (¶ 12).

Plaintiff is also requesting $904.09 for litigation expenses incurred. Filing 103 at 3–4 (¶ 11). The breakdown of expenses is as follows: $170.30 for mileage for trial, $31.44 for mileage for a trial technology meeting, $335.38 for mileage for depositions in North Platte, Nebraska, $273.02 for lodging expense for depositions, $24 for in-house photocopies of trial exhibits, $6 for storage devices for trial exhibits, and $62.60 for Pacer charges for filings and research. Filing 104-1 at 5–6 (¶ 22)

## B. Procedural Background

Plaintiff brought eight claims of violations of Nebraska and federal laws following the termination of her employment by Defendant. In Counts I and II of her Second Amended Complaint, Plaintiff alleges retaliation in violation of 42 U.S.C. § 2000e-3(a) and Neb. Rev. Stat. § 48-1114, respectively. Filing 25 at 6 (¶¶ 25–29). These claims are based on allegations that she engaged in protected activity by internally complaining of sexual harassment to her supervisors, then suffered adverse employment action, including but not limited to subjecting her job performance to higher scrutiny than others, failing to investigate her claims of sexual harassment, and terminating her employment. Filing 25 at 6 (¶¶ 26–27). In Count III, Plaintiff alleges "whistleblower retaliation" in violation of Neb. Rev. Stat. § 48-1114(1)(c). Filing 25 at 7 (¶¶ 30–35). This claim is based on allegations that Plaintiff "engaged in protected activity, including but not limited to opposing practices and refusing to carry out any action unlawful under Federal and state law"—specifically, complaining of the mistreatment or abuse of a protected adult by one of Defendant's employees in violation of the Nebraska Adult Protective Services Act—and that she

3

suffered adverse employment action because of it, including but not limited to subjecting her job performance to higher scrutiny than others, failing to investigate her claims, and terminating her employment. Filing 25 at 7 (¶¶ 32–33).[1] In Count IV, Plaintiff alleges wrongful termination in violation of Nebraska public policy, alleging that she was terminated for complaining of the mistreatment or abuse of a protected adult by one of Defendant's employees, even though failing to report suspected abuse of an elderly adult can subject her to a criminal penalty. Filing 25 at 8 (¶¶ 38–39). Counts V and VI allege claims of disparate treatment sex discrimination in violation of 42 U.S.C. § 2000e-2 and Neb. Rev. Stat. § 48-1004, respectively. Filing 25 at 8–9 (¶¶ 41–46). Counts VII and VIII allege hostile work environment sex discrimination in violation of 42 U.S.C. § 2000e-2 and Neb. Rev. Stat. § 48-1004, respectively, based on coworker Chris Eugene's unwelcome sexual conduct toward Plaintiff. Filing 25 at 9–10 (¶¶ 47–56).

Defendant moved for summary judgment on August 1, 2022. Filing 29. On December 9, 2022, the Court dismissed two of Plaintiff's claims and granted summary judgment for Defendant on four of Plaintiff's claims but allowed her two remaining claims alleging hostile work environment sex discrimination in violation of 42 U.S.C. § 2000e-2 and Neb. Rev. Stat. § 48-1004 to go to trial. Filing 40 at 29–30. These claims went to trial before a jury from May 9, 2023, through May 12, 2023. Filing 103 at 1 (¶ 1).

At trial, the jury found for Plaintiff on her claims of a hostile work environment in violation of Title VII and NFEPA, and the jury initially awarded Plaintiff $3,000,000 in emotional distress damages and punitive damages. Filing 86 at 1–2. The Court later reduced that award on application of the applicable statutory caps, as explained at the beginning of this decision. Filing 101 at 15.

---

[1] Plaintiff actually cites Neb. Rev. Stat. § 48-1114(3), which was effective to August 31, 2019. As the Eighth Circuit Court of Appeals has explained, "In 2019, the Nebraska Legislature renumbered § 48-1114(3) to § 48-1114(1)(c), but the operative language remains the same." *Walker v. First Care Mgmt. Grp., LLC*, 27 F.4th 600, 604 n.3 (8th Cir. 2022) (citing L.B. 217, § 1, 106th Leg., Reg. Sess. (Neb. 2019))

Plaintiff now seeks attorneys' fees in the amount of $128,153 and costs in the amount of $904.06 from Defendant. Filing 103 at 4 (¶ 12). Defendant opposes the full amount claimed because it believes the lead attorney's rate of $350 per hour is excessive and that the overall attorneys' fee award should be reduced to account for the hours spent on unsuccessful claims. Filing 110 at 10.

## II. STANDARD OF REVIEW

"A request for attorney[s'] fees should not result in a second major litigation," but the "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The determination of what "a reasonable attorneys' fee is [is] a matter peculiarly within the district court's discretion." *Marshall v. Anderson Excavating & Wrecking Co.*, 8 F.4th 700, 712 (8th Cir. 2021) (quoting *Greater Kan. City Laborers Pension Fund v. Thummel*, 738 F.2d 926, 931 (8th Cir. 1984) (applying 29 U.S.C. § 1132(g)(2)(D))); *Hanig v. Lee*, 415 F.3d 822, 825 ("Attorney[s'] fees are within the broad discretion of the district court.").

When determining an attorneys' fee award amount, courts begin with the lodestar method, which is "calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 429 (8th Cir. 2017) (quoting *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002)).

After calculating the lodestar amount, a district court "may [then] consider other factors to 'adjust the fee upward or downward.'" *Marshall*, 8 F.4th at 712 (quoting *Smith v. AS Am., Inc.*, 829 F.3d 616, 623 (8th Cir. 2016), in turn quoting *Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 965 (8th Cir. 2012)). "Results obtained" is an important factor for the adjustment of fee awards. *Dindinger*, 853 F.3d at 429; *Marshall*, 8 F.4th at 712-13 ("[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney[s'] fees.") (quoting *Hensley*, 461 U.S. at 440). The court should consider if "the plaintiff fail[ed] to prevail

5

on claims that were unrelated to the claims on which he succeeded [and]…[if] the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Dindinger*, 853 F.3d at 429 (quoting *Hensley*, 461 U.S. at 434). "Claims are related…if they 'involve a common core of facts' or are 'based on related legal theories.'" *Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001) (quoting *Hensley*, 461 U.S. at 435).

While "results obtained" is the most important factor in determining a fee award, "the district courts should generally evaluate 'the ultimate reasonableness of the award…by considering relevant factors from the twelve factors listed' in *Johnson* [*v. Georgia Exp., Inc.*]" *League of Women Voters of Missouri v. Ashcroft*, 5 F.4th 937, 941 (8th Cir. 2021) (quoting *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018)). The twelve factors to determine a reasonable attorney fee are (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). However, "[h]aving considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness." *Farrar v. Hobby*, 506 U.S. 103, 115 (1992); *Baker v. John Morrell & Co.*, 263 F. Supp. 2d 1161, 1190 (N.D. Iowa 2003) ("[T]he court need not exhaustively address every factor."). While "the district court has discretion in determining the

6

amount of a fee award," it is important for "the district court to provide a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437.

### III. DISCUSSION

### A. Hourly Rate

*1. The Parties' Arguments*

Plaintiff asserts that the Court should award the full amount requested. Filing 105 at 6. Plaintiff contends that given the experience of Plaintiff's lead counsel and co-counsel and the intensity of the litigation of this case, the rates and total fee award requested are reasonable. Filing 105 at 4. Plaintiff cites primarily to persuasive case law that supports an hourly rate of $350 and the requested fee amount. Filing 105 at 5-6. Plaintiff also offers declarations from two civil rights attorneys, Kathleen Neary and Kelly Brandon, averring that the lead counsel's rate is customary for employment attorneys with similar training, experience, and success. Filing 105 at 4–5.

Defendant argues that the lead attorney's hourly rate of $350 exceeds the prevailing market rate. Filing 110 at 2. Defendant cites a persuasive decision from the District of Nebraska in which Magistrate Judge Nelson, recently recognized that the rate for experienced litigators in Nebraska was $250 to $350 per hour, and Defendant suggests that the $350 hourly rate is to be "commanded by the most experienced members of the bar." Filing 110 at 2–3 (citing *BJ's Fleet Wash, LLC v. City of Omaha*, No. 8:22CV131, 2023 WL 2964432, at *5 (D. Neb. Mar. 8 2023)). Defendant asserts that since Plaintiff's lead counsel has only been practicing law since 2007 and this is her second jury trial as lead attorney, her experience does not align with a rate on the outer bounds of the hourly rate range recognized in *BJ's Fleet Wash*. Filing 110 at 3. Defendant argues further that Plaintiff's co-counsel, Thomas Rowen, has more experience and charges a lower hourly rate. Filing 110 at 3-4. Defendant contends that Plaintiff's lead counsel's hourly rate should be reduced

to $300 to better align with the prevailing market rate for Omaha, Nebraska, recognized in *BJ's Fleet Wash* for an attorney of her experience level. Filing 110 at 4, 10.

In reply, Plaintiff argues that the lead attorney's hourly rate is reasonable. Filing 115 at 1. Plaintiff disagrees that the "upper rate is to be commanded by the most experienced members of the bar." Filing 115 at 2. Plaintiff continues that there was no specific evidence to support the range given in case law cited by Defendant. Filing 115 at 3. Plaintiff argues that the lead attorney should not be denied the prevailing rate because this is only her second jury trial as lead attorney. Filing 115 at 5. Plaintiff adds that the lead attorney's rate should not be the same as co-counsel's despite co-counsel having more experience because co-counsel's role was limited to general litigation due to his lack of experience litigating employment law cases. Filing 115 at 6.

    2.    *Applicable Law*

"As a general rule, a reasonable hourly rate is the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated.'" *Marshall*, 8 F.4th at 712 (quoting *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002), in turn quoting *Emery*, 272 F.3d at 1048). "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Hanig*, 415 F.3d at 825. "The court 'has great latitude to determine a reasonable hourly rate because it is intimately familiar with its local bar.'" *Burton v. Nilkanth Pizza Inc.*, 20 F.4th 428, 431 (8th Cir. 2021) (quoting *Childress v. Fox Assocs., LLC*, 932 F.3d 1165, 1172 (8th Cir. 2019)).

    3.    *The Lead Attorney's Hourly Rate of $350 is Excessive and Inconsistent with the Prevailing Marketing Rate for Omaha, Nebraska*

The Court concludes Plaintiff's primary counsel is an experienced attorney. However, the Court concludes that the lead attorney does not have the experience that allows her to charge an hourly rate of $350, which in the judgment of the Court would be at the top of the regional legal

8

market for the kind of work involved in this case. The Court notes that her co-counsel, who has more experience, charges a lower rate. *See Johnson*, 488 F.2d at 718 (stating that one factor the district courts may consider to adjust an attorneys' fee award upward or downward is "the experience, reputation, and ability of the attorneys."). While Plaintiff claims that co-counsel's hourly rate is a reflection of his participation as a second chair attorney, there was no evidence submitted that if he was the lead attorney, he would charge a higher rate. In co-counsel's declaration, he stated that his hourly rate from January 1, 2022 to the present was $300 and did not specify that his rate would be higher when he is not operating in a limited capacity. Filing 104 at 2 (¶ 11).

Although Plaintiff points to persuasive case law that supports an hourly rate of $350 for some employment law attorneys, and the "customary" rate is one of the *Johnson* factors, *Johnson*, 488 F.2d at 718, district courts are permitted to consider "their own experience and knowledge of prevailing market rates." *Hanig*, 415 F.3d at 825. The undersigned judge is familiar with customary rates given he served as a civil litigation attorney for nineteen (19) years at Nebraska's largest law firm. The undersigned judge has also remained knowledgeable of customary fees since his departure from the practice of law for the Federal bench four years ago, particularly given he has experience reviewing fee applications on other cases. Based on the Court's knowledge and experience, an hourly rate of $350 in this state for this litigation is excessive for the type of work performed in this case and the experience level of the primary Plaintiff's attorney. The Court is of the view that the $300 per hour rate Plaintiff's lead attorney charged from November 20 to December 2021 was somewhat aggressive for that time period for the Nebraska market for this type of work. Even if rates have tended to increase over the past several years, the Court concludes $300 per hour is still the appropriate number. The Court notes that it has considered the

9

circumstances of the Nebraska legal market for employment cases for the entirety of the timeframe involved when concluding that $300 per hour is appropriate for this case.

District courts have broad discretion when determining what a reasonable hourly rate is as it is familiar with the local bar. *Burton*, 20 F.4th 431. Therefore, the lead counsel's hourly rate will be reduced to $300 to align with the prevailing market rate for attorneys with Plaintiff counsel's level of experience in Omaha. The adjusted total for the 312.1 hours that were previously billed at the $350 hourly rate is $93,630. Plaintiff's lead counsel's adjusted total is $100,620 and the lodestar calculation is $112,548 (including co-counsel's fees in the amount of $2,280 and paralegal fees in the amount of $9,648).

### B. Reduction for Partial Success

*1. The Parties' Arguments*

Plaintiff argues that she "achieved complete success and full vindication" on her sexual harassment claim at trial. Filing 105 at 4. Plaintiff argues further that she should be awarded full attorneys' fees and costs because of her "ultimate success" from the jury verdict of $3,000,000. Filing 105 at 4.

Defendant argues that Plaintiff should not be able to recover fees for time spent on dismissed claims. Filing 110 at 4. Defendant argues that plaintiffs may only recover fees for unsuccessful claims that are related. Filing 110 at 6. Defendant also asserts that Plaintiff "failed" on six of her claims and her claims have a different set of core facts, making them unrelated claims. Filing 110 at 7. Defendant asks the Court to reduce the total award by 25% to account for Plaintiff's degree of success because the billing records do not distinguish time spent on unsuccessful claims. Filing 110 at 9.

In reply, Plaintiff argues that her claims share a common core of facts, and are therefore related, because they all arose out of her employment. Filing 115 at 6. Plaintiff argues further that

the time spent on each claim, including those that were dismissed, was "instrumental" in her success so that those hours were reasonably expended. Filing 115 at 8.

2. *Applicable Law*

As mentioned above in § II, after calculating the lodestar amount, a district court "may [then] consider other factors to 'adjust the fee upward or downward.'" *Marshall*, 8 F.4th at 712 (quoting *Smith*, 829 F.3d at 623, in turn quoting *Marez*, 688 F.3d at 965). As the Supreme Court recognized in *Hensley*:

> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.

*Hensley*, 461 U.S. at 436-37; See also *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 650 (8th Cir. 2022) ("The district court was in the best position to assess whether the previously dismissed claims against the [defendant] were sufficiently related to justify a full award of fees."). "If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436. "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440. "If claims are related, the "lawsuit cannot be viewed as a series of discrete claims…[so] the district court should [then] focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'"" *Heaton v. Weitz Co., Inc.*, No. 05-CV-102-LRR, 2007 WL 2301251, at \*8 (N.D. Iowa Aug. 8, 2007), aff'd, *Heaton v. The Weitz Co., Inc.*, 534 F.3d 882 (8th Cir. 2008) (quoting *Hensley*, 461 U.S. 440).

In *Heaton v. Weitz Co., Inc.*, the United States District Court for the Northern District of Iowa found that despite the plaintiff abandoning three of his claims, those claims arose out of identical facts that were presented to the jury on the successful claims and therefore related. 2007 WL 2301251, at *8 (N.D. Iowa Aug. 8, 2007). In that case, the unsuccessful claims and the successful ones that went to the jury shared specific facts that the court identified: "(1)…supervisor made racially-charged and derogatory comments to [plaintiff], (2) [plaintiff] reported the incident to [defendant]'s human resources department, (3) [plaintiff] was given the choice between demotion or layoff and (4) after [plaintiff] was laid off, he was not called back to work as a…superintendent or in another supervisory capacity." *Id.* Additionally, the court found the unsuccessful and successful claims to be related because "the evidence and work on the various claims was intertwined and necessary to all of the claims." *Id.* While all of the plaintiff's claims were related and the plaintiff achieved a high level of success on the two remaining claims, because the plaintiff abandoned three of his five claims at summary judgment, the court still found it appropriate to reduce the attorneys' fee award by 10%. *Id.* at *8–*9. Similarly, in *Fish v. St. Cloud State University*, the Eighth Circuit Court of Appeals upheld the Minnesota District Court's decision to reduce the lodestar by 15% for the plaintiff's lack of complete success because even though the parties entered into a settlement agreement and the plaintiff claimed the result was "exceptional," "the settlement agreement did not reflect complete success on all claims." 295 F.3d 849, 852 (8th Cir. 2022).

    3.    *Plaintiff's Attorneys' Fee Award Should Be Reduced to Reflect Partial Success*

        a.   Plaintiff's Claims are Distinct and Unrelated

Plaintiff argues that her claims are related because the claims all share a common core of facts, her employment. Filing 115 at 4; *Cf. Gruttemeyer*, 31 F.4th at 650 ("[T]he district court

found that the claims…were related since the same evidence and witnesses would have been required…"). The Court disagrees. *See Heaton*, No. 05-CV-102-LRR, 2007 WL 2301251, at *8 (the court held that the plaintiff's successful and unsuccessful claims were related because they shared a specific "common core of facts."). As previously set out in § I.B, Plaintiff originally brought claims alleging retaliation (Counts I and II), "whistleblower retaliation" (Count III), wrongful termination (Count IV), disparate treatment sex discrimination (Counts V and VI), and hostile work environment sex discrimination (Counts VII and VIII). *See generally* Filing 25 at 6-10. Plaintiff only succeeded on her claims alleging hostile work environment sex discrimination, which centered on Eugene's conduct. Her other claims were centered on her termination and the conduct of her supervisors. Unlike in *Heaton*, where the district court found the plaintiff's unsuccessful and successful claims to be related, Plaintiff's claims do not share a common core of facts merely because they involve Plaintiff's employment. The facts and evidence presented to prove unwelcome sexual conduct are not the same as those presented to prove retaliation and wrongful termination. Therefore, Plaintiff's unsuccessful claims are unrelated to her successful claims and must be treated as discrete and separate.

b. Plaintiff Only Achieved Partial Success on Her Claims

Plaintiff originally brought eight claims and only two were tried and successful. As in *Heaton* and *Fish*, where the district courts reduced the plaintiffs' attorneys' fee award to account for limited success, most of Plaintiff's claims were unsuccessful, despite Plaintiff obtaining an initial jury verdict of $3,000,000. Therefore, the Court finds that Plaintiff's award should be reduced because she only prevailed on two of her claims and the unsuccessful claims did not share a "common core of facts", so the hours spent pursing them should not be included in the calculation. *Hensley*, 461 U.S. at 436-37. The hours submitted by Plaintiff were not separated out by claim, but the Court concludes that Defendant's suggestion of a 25% reduction is excessive.

Therefore, the Court finds that a reduction of 15% is appropriate to account for time spent on unrelated, unsuccessful claims. *See Hensley*, 461 U.S. at 435, 436-37, 440. The 15% reduction is $16,882.20, which reduces the award to $95,665.80.

## IV. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Plaintiff's Motion for Attorneys' Fees and Expenses, Filing 103, is granted as follows:

1. Plaintiff shall recover from Defendant the sum of $95,665.80 for attorneys' fees; and

2. Plaintiff shall recover from the Defendant the sum of $904 for costs.

Dated this 18th day of October, 2023.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge